[No. 35187.    Department One.    March 17, 1960.]

ETHA GIBFORD, *Respondent,* v. RONALD GIBFORD, *Appellant.*[1]

[1]Reported in 350 P. (2d) 158.

*John L. Vogel,* for appellant.

*J. Edmund Quigley,* for respondent.

OTT, J.—March 16, 1953, Etha Gibford was granted a default decree of divorce from Ronald Gibford. The custody of Lana, aged six years, and Michael Steven, aged five months, was awarded to her "reserving to defendant reasonable rights of visitation and the right to have with him for the three summer vacation months the minor child, Lana." The decree further provided

" . . . that until such time as plaintiff remarries the defendant shall pay to the plaintiff the sum of $37.50 per month for each of the minor children of the parties hereto, the $37.50 per month for the minor child, Lana, to be paid only while she is with the plaintiff."

February 9, 1959, Ronald Gibford petitioned the court for modification of the decree, alleging that,

"Since the entry of said decree, material changes have occurred requiring the modification thereof; among other things, both petitioner and plaintiff are remarried; petitioner is happily married and resides on a ranch at Hamilton, Montana; plaintiff likewise remarried and has been residing with her husband, Donald E. Pick, in Seattle, Washington. A divorce action has been commenced in the Superior Court of the State of Washington, for King County, by the present husband of plaintiff herein against her, being entitled: 'Donald E. Pick vs. Etha Pick, No. 530144'; the file in said cause reflects a long period of disagreement and dissension and an unhealthy atmosphere for the chil-

dren of your petitioner; the environment afforded the two minor children of petitioner and plaintiff above named has resulted in emotional disturbances in the children; the mother of the children is unable and unwilling to adequately care for and supervise said children and to provide them with the environment and care to which they are entitled and it would be for the betterment and welfare of the children that the decree of divorce entered herein be modified so as to award to petitioner the sole care, custody and control of said minor children."

April 1, 1959, a hearing was had upon the petition, the issues being joined by counsel for Etha Gibford Pick "entering a general denial to the allegations contained in the petition."

Ronald Gibford testified, *inter alia*, that in 1956 he married Irene Gibford, his present wife; that they resided on a twelve-acre farm near Hamilton, Montana; that the children, Lana and Michael, enjoy living on the farm, doing chores, and riding horses; that Lana had attended school, riding in on the school bus that passed the farm residence; that he had asked for the modification of the decree with reference to the child custody provision in part at the instance of Lana, believing it would be for the best welfare of both children because their home life with their mother had become disturbed due to the difficulty she was having with her husband, Mr. Pick. He stated that he had fully complied with all of the requirements of the divorce decree.

Irene Gibford testified relative to their wholesome home life and that she would, if permitted by the court, make a suitable home for the children.

Lana Gibford, then aged twelve years, testified that she desired to live with her father because she loved him more than she loved her mother; that living in his home was wholesome and pleasant, and that living in the Pick home was characterized by fighting and distrust between her mother and Mr. Pick. In this regard, she testified:

"Well, that way when you come home in Seattle here, you don't know what's happening; you don't know if something is going to be happening at the home or what is going to turn up; you just don't know, I mean, — from one

day your family will be together and the next it will be just separated. Then in Montana you come home and, I mean, everybody is together and we all have a good time together; we go on picnics and we go visiting to other families together."

She further testified that, on one occasion, her mother had been physically abused by her stepfather; that she had been previously instructed by her mother that when she heard her scream she should flee from the home, and that, in accordance with those instructions, she fled. Lana also testified that her mother worked as a barmaid and the children would sometimes be left alone; that she preferred to live with her father; that Michael had expressed to her that his choice was to live with their father also, and that her father and stepmother had in no way influenced her dislike for her mother. Lana further testified that she had overheard her mother admit, during her arguments with her husband, Mr. Pick, that she had been guilty of immoral conduct. (The conditions at the Pick home just prior to the institution of the divorce action were so bad that the mother sent both children to live with their father in Montana.)

The only witness called to refute this evidence was Mrs. Hazel Bates, a neighbor, who stated she had lived near Mrs. Pick for two years; that she believed the Pick home was a good home for the children and compared favorably with her own; that the home was near a school; that she knew of no unpleasantness at the Pick home; that she did not know of the impending divorce until Mrs. Pick told her about it, and that she believed the children were never left alone.

Etha Gibford Pick, the mother, did not testify.

At the close of the petitioner's evidence (the witness Mrs. Bates having been called out of turn), counsel for Mrs. Pick challenged its sufficiency. The court sustained the challenge and denied the petition for modification. The court entered findings of fact and conclusions of law and, by decree, reinstated support payments by the father, fixing the amount at fifty dollars a month for each child, and

denying the father visitation privileges if support payments were not made.

The petitioner has appealed.

Appellant assigns error to the court's finding of fact No. 1 that there was insufficient evidence to warrant the modification prayed for in the petition. Although this is labeled a finding of fact, it is a conclusion of law. There is abundant evidence in the record before us to warrant a legal conclusion that the decree should be modified. The evidence of Lana, her father, and stepmother stands unchallenged. Their testimony established that it would be for the best interests of the two minor children to remove them from the Pick household and transfer them to the home of their father, where they could enjoy a normal, well-adjusted family life. The testimony of Mrs. Bates established nothing to the contrary.

Appellant next assigns error to the court's second finding that he failed to support the children during the past five and one-half years. This likewise is not supported by the record. The evidence stands uncontradicted that the petitioner complied fully with the support provisions of the original divorce decree. There was no proof that the respondent had ever requested the appellant to contribute more than the decree required. There was substantial evidence that appellant voluntarily contributed materially to the support and welfare of Lana; that his attempts to aid Michael were spurned by the respondent, and that his visitation privileges with Michael were denied.

The appellant next assigns error to what the court designated as "finding of fact" No. 4, which reads:

"That the petitioner, Ronald Gibford, shall be ordered to pay as support for each of the minor children herein the sum of $50.00, per month per child and that said payments shall commence on April 1, 1959."

The respondent wife did not request a reinstatement of the support provisions. Her denial of the allegations of the petition for modification of the custody provision of the decree did not put in issue the reinstatement of support.

There was no proof offered to establish the basic essentials for reinstatement of the support provisions, namely, a changed condition or need on the part of the respondent, or a changed condition or increased ability to pay on the part of the appellant. *Malfait v. Malfait,* 54 Wn. (2d) 413, 341 P. (2d) 154 (1959); *Hanson v. Hanson,* 47 Wn. (2d) 439, 287 P. (2d) 879 (1955).

■ The court, on its own motion, imposed the support obligation upon the appellant. The court predicated re-imposition of support money upon the conclusion that the appellant had defrauded the court in obtaining a decree relieving him of the obligation to pay child support upon the remarriage of the respondent. The conclusion that fraud was perpetrated upon the court is not supported by the record. The respondent instituted the original divorce proceeding. The appellant defaulted. The property settlement agreement was prepared and presented to the court by respondent's attorney. The decree of divorce was entered upon the testimony of the respondent. There was no evidence of a fraud perpetrated upon the trial court by either of the parties.

■ Appellant assigns error to the court's finding of fact No. 5 that his visitation privileges will be denied upon failure to pay the support money. This is error. Visitation privileges cannot be conditioned upon the payment of support. *Malfait v. Malfait, supra.*

For the reasons stated, the judgment is reversed, and the cause remanded with instructions to grant a new trial.

WEAVER, C. J., MALLERY, DONWORTH, and HUNTER, JJ., concur.

---

April 25, 1960. Petition for rehearing denied.