301 S.E.2d 475

Cecil A. **LEDSOME**

v.

Barbara E. **LEDSOME.**

No. 15608.

Supreme Court of Appeals of
West Virginia.

March 11, 1983.

Keith H. Gordon, Fairmont, for appellant.

No appearance for appellee.

McHUGH, Justice:

This action is before this Court upon the petition of the appellant, Cecil A. Ledsome, for an appeal from the final order of the Circuit Court of Marion County, West Virginia. Pursuant to that order, entered on May 19, 1982, the circuit court concluded that as a result of the failure of the appellant subsequent to his divorce from the appellee, Barbara E. Ledsome, to provide adequate child support for his three minor children, the appellant was entitled to no visitation privileges with those children. This Court has before it the petition for appeal, all matters of record and the brief of the appellant. The appellee has not appeared in this appeal.

By order entered on June 16, 1981, the appellant obtained a divorce from the appellee in the Circuit Court of Marion County. The appellee failed to answer or appear in that proceeding. Pursuant to the June 16, 1981, order the appellee was granted custody of the parties' three minor children subject to the visitation privileges of the appellant. Furthermore, the appellant's obligation to pay child support was made subject to the appellant's ability to secure employment. Paragraphs two and three of the June 16, 1981, order provided as follows:

2. The Plaintiff is granted reasonable visitation privileges with the three minor children to wit: Misty Dawn Ledsome, Eric Eugene Ledsome and Heather Carroll Ledsome. Said visitation privileges shall include but, not be limited to, alternating week-ends on the 1st and 3rd week-ends of each month to begin at 7:00 p.m. on Friday evening, the children shall be returned to their mother at 7:00 p.m. on Sunday evening. The defendant is granted care, custody and control of the children.

3. The Plaintiff, being currently unemployed, is not ordered to pay any specific amount of child support at this time. However, at such time as when the plaintiff obtains regular employment the defendant my [sic] petition the Court to modify this decree to take into account of [sic] change of circumstances of the parties.

The petition before this Court asserts that subsequent to the divorce the appellee refused to permit visitation of the children by the appellant. On June 29, 1981, the appellant instituted a contempt action in Marion County to enforce his visitation privileges.

A hearing upon the contempt action was held before the circuit court on May 17, 1982, and both the appellant and the appellee were present.[1] The appellant testified that the appellee failed to permit his visitation privileges with the children and that he was unable to contribute to the support of those children.

The circuit court noted that the appellee was twenty years old and concluded that the appellant had not made a sufficient effort to support the three children. The circuit court, pursuant to its May 19, 1982, order, dismissed the appellant's contempt action.

By order entered on November 23, 1982, this Court granted the appellant temporary relief concerning the visitation of his children pending final determination of this appeal. As indicated in the petition before this Court, the appellant seeks enforcement of his visitation privileges without regard to the appellant's ability to pay child support.

The statutory rights and duties of parties with respect to actions for divorce, annulment or separate maintenance are found in chapter 48, article 2, of the West Virginia Code. Very little is stated in that article concerning a parent's right to visit his or her child subsequent to a divorce.

*W. Va. Code*, 48-2-15 [1980], provides, in part, as follows:

Upon ordering a divorce, the court may make such further order as it shall deem expedient, concerning the maintenance of the parties, or either of them; and upon ordering the annulment of a marriage, or a divorce, the court may make such further order as it shall deem expedient, concerning the care, custody, education and maintenance of the minor children, and may determine with which of the parents or other proper person or persons the children or any of them, may remain....

. . . .

Upon ordering the annulment of a marriage or a divorce, the court may, in its discretion, make such further order as it shall deem expedient, concerning the grant of reasonable visitation rights to any grandparent of the minor children upon application, if the grandparent or grandparents are related to such minor child through a party to such action whose whereabouts are unknown or through a party who did not answer or otherwise appear and defend the cause of action in which such divorce or annulment is granted, and the court may issue any necessary order to enforce such order or decree.

---

1. The petition before this Court asserts that after the institution on June 29, 1981, of contempt proceedings against the appellee, the appellant went to North Carolina in search of employment. The appellant obtained employment in that state for a short time and was able in October, 1981, to send the appellee $50.00 for child support. The appellant subsequently lost his employment and in December, 1981, returned to West Virginia where he pursued the contempt action against the appellee to enforce his visitation privileges.

Pursuant to *W.Va.Code*, 48–2–4 [1981], in the case of a divorce upon the ground of irreconcilable differences: "The court may make orders for or approve, modify or reject any agreement between the parties pertaining to just and equitable ... visitation rights."

In *St. Clair v. St. Clair*, 166 W.Va. 173, 273 S.E.2d 352 (1980) (per curiam), this Court stated as follows: "And a court, in defining a parent's right to visitation is charged with giving paramount consideration to the welfare of the child involved." 166 W.Va. at 177, 273 S.E.2d at 355. *See also J.M.S. v. H.A.*, 161 W.Va. 433, 242 S.E.2d 696 (1978).[2]

The issue before this Court is whether the visitation rights of the appellant may be denied as a result of his failure to provide child support, especially with regard to the fact that during the period in question no court order directed the appellant to provide child support. Our research reveals that visitation rights are dependent upon the welfare of the child and that, ordinarily, a father's visitation rights may not be denied merely for nonpayment of child support.[3]

In *Kane v. Kane*, 154 Colo. 440, 391 P.2d 361 (1964), the Supreme Court of Colorado held that a trial court may not punish a father, delinquent in his child support payments through no fault of his own, by denying the father visitation rights until he becomes current in his payments. In *Block v. Block*, 15 Wis.2d 291, 112 N.W.2d 923 (1961), *cert. denied* 368 U.S. 906, 82 S.Ct. 186, 7 L.Ed.2d 100, *reh'g denied* 368 U.S. 945, 82 S.Ct. 383, 7 L.Ed.2d 341 (1961), the Supreme Court of Wisconsin stated as follows:

> The rights of visitation should not be denied a parent to punish him because of

**2.** In *J.M.S. v. H.A., supra,* this Court held that a circuit court had jurisdiction to award or deny visitation rights to a father of an illegitimate child. In that action, this Court stated as follows:

> We are cognizant of the fact that the above cited cases deal with custody rather than visitation. The difference between these terms is obvious, custody meaning the 'care and keeping of anything', Black's Law Dictionary, Revised 4th Ed. and visitation connoting the 'act or an instance of visiting', Webster's New World Dictionary, College Edition. Considering these definitions and the plain meaning of the words, it is apparent that custody confers more authority and power upon one in whom it is placed than does the privilege of visiting. If a court has jurisdiction to grant custody, *a fortiori*, it certainly possesses jurisdiction to grant visitation rights in a proper case.
>
> . . . .
>
> It is clear from an examination of the cases that a court, in determining a father's right to visitation of a child, legitimate or illegitimate, is charged with giving paramount consideration to the welfare of the child involved. While jurisdiction of such subject matter, visitation privileges, is not specifically defined, Article VIII, Sec. 6 of our constitution clearly provides the circuit courts with the power and authority to handle such matters.
>
> ... To deprive a parent of visitation rights without a hearing would constitute a denial of due process and equal protection under our state and federal constitutions. W.Va.Const., Art. III, § 10; U.S. Const., 14th Amend.

161 W.Va. at 436–37, 242 S.E.2d at 697–98.

**3.** An annotation upon the question of denial of visitation rights for failure to make support payments appears in Annot., 51 A.L.R.3d 520 (1973). The summary of that annotation states, in part, as follows:

> Of the cases reaching the merits of the question, it has generally been held that a father's visitation rights may not be withheld or denied merely for nonpayment of support or alimony, but that denial may be proper under certain circumstances.
>
> . . . .
>
> Of the cases recognizing the propriety of denial under certain circumstances, several courts have expressly embraced the view that a court may not deprive a father of visitation unless, as a minimum requirement, it appears that his nonpayment was contumacious, a proposition which may be implicit in all the cases collected. Thus, it has been stated that although it is reasonable to deny a contumacious father visitation, it is wrongful to deprive an innocent father of visitation merely for nonpayment, where visitation is otherwise beneficial to a child.
>
> . . . .
>
> [Courts] have consistently applied the theory that the welfare of the child is the paramount consideration in deciding whether to deny visitation.
>
> . . . .
>
> Thus, the rule that denial may be based upon contumacious nonpayment has been held especially applicable where the failure to pay support or alimony was in violation of a court decree or order. Conversely, the rule that denial may not be based upon mere nonpayment has ordinarily been applied in the absence of a judicial order or contract requiring such payments.

Annot., 51 A.L.R.3d 520 at 525–26.

his failure to pay support money for the child. The paramount reason for visitation is the benefit to be derived by the child from associating with its parents and its welfare should not be jeopardized by an order conditioned upon payment of support money or alimony even though such order might prove effective as a collection device.

15 Wis.2d at 297, 112 N.W.2d at 927.

The Supreme Court of Washington in *Gibford v. Gibford*, 55 Wash.2d 760, 350 P.2d 158 (1960), stated as follows: "Visitation privileges cannot be conditioned upon the payment of support." 55 Wash.2d at 765, 350 P.2d at 161. *See also Lunsford v. Waldrip*, 6 Wash.App. 426, 493 P.2d 789 (1972), in which action the Court of Appeals of Washington stated as follows: "Withholding visitation for the sole reason that money is unpaid, due and owing is an improper exercise of judicial discretion." 493 P.2d at 792. In *Commonwealth ex rel. Lotz v. Lotz*, 188 Pa.Super. 241, 146 A.2d 362 (1958), *aff'd* 396 Pa. 287, 152 A.2d 663 (1959), the Superior Court of Pennsylvania stated that the "mere failure to support is not grounds for refusing visitation rights." 188 Pa.Super. at 244, 146 A.2d at 363.[4]

The Supreme Court of Idaho in *Wilson v. Wilson*, 73 Idaho 326, 252 P.2d 197 (1953), stated as follows:

It is only under extraordinary circumstances that a parent should be denied the right of visitations, even though the parent is guilty of marital misconduct. Default in the payment of support money is not in itself sufficient reason to deprive the father of the right to see and visit his child.

73 Idaho at 328, 252 P.2d at 198.

In *Wilson, supra*, even though the father failed to consistently support the child, the court noted that nothing in the transcript indicated that visitation "would create a situation or influence in anywise de-

trimental to the child's welfare." 73 Idaho at 329, 252 P.2d at 198.

In *Roshto v. Roshto*, 214 La. 922, 39 So.2d 344 (1949), a husband sought judicial recognition of his visitation rights where he and his wife had separated and later divorced. Custody of their child had been awarded to the wife. In that action, the husband rendered little or no support to the child, and neither alimony nor support had been awarded to the wife by the separation and divorce judgments. In *Roshto*, the Supreme Court of Louisiana recognized the father's right of visitation, concluding that there was no proof in the record that visitation would be detrimental to the child. The court stated as follows:

A parent possesses certain natural rights with respect to his child whose custody is given to the other parent. One of these is the right to visit the child. This natural right of the parent should not be taken from him unless the evidence conclusively shows that his conduct is of such a nature that he has forfeited the right of access to his child.

214 La. at 926, 39 So.2d at 345.

Other cases consistent with the above include *In re McMenamin*, 310 P.2d 381 (Okl.1957), *Miles v. Miles*, 185 Or. 230, 202 P.2d 485 (1949), and *Sweat v. Sweat*, 238 Iowa 999, 29 N.W.2d 180 (1947).

On the other hand, the above cases and others indicate that certain improper conduct by the parent seeking visitation may justify a reduction or denial of the right of visitation. We need not in this action consider every form of such improper conduct. However, we recognize that in some cases visitation has been denied where the party seeking visitation has, to the detriment of the child, contumaciously, or willfully and intentionally, refused to make child support payments. *See* Annot., 51 A.L.R.3d 520 (1973) n. 3 *supra*.

---

**4.** In *Commonwealth ex rel. Lotz v. Lotz, supra*, the court noted as follows:

Visitation rights of a parent not in custody have long been a matter of concern to the law of this Commonwealth. They must be carefully guarded for when parents are separated

and custody is placed in one of the parents, there exists a danger that the parent having custody of the child may use his or her advantageous position to alienate the other parent from the affections of the child.

188 Pa.Super. at 246, 146 A.2d at 364.

In *Acker v. Acker*, 365 So.2d 180 (Fla. Dist.Ct.App.1978), the District Court of Appeal of Florida held that although the right to child visitation may not be conditioned upon the timely payment of child support, "in the face of a willful and intentional refusal to pay child support which is detrimental to the welfare of the child, the right to child visitation may be terminated." 365 So.2d at 181. In *Acker*, the court, with respect to visitation, distinguished excusable failure to pay child support from willful and intentional failure to pay child support. The court stated as follows:

> In the instant situation appellant had not paid child support for approximately three years which was almost the entire time the parties had been divorced. During most of this time appellant clearly had the ability to pay support. Despite his own non-compliance appellant filed a motion to hold his former wife in contempt for her alleged failure to allow child visitation. On the day of the hearing on his motion for contempt, the husband, at long last, tendered a $25.00 payment toward future child support. The husband's conduct was both willful and intentional and clearly detrimental to the welfare of the infant child.

365 So.2d at 181.

*See also People ex rel. Norris v. Norris,* 209 N.Y.S.2d 232 (N.Y.Sup.Ct.1960).

■■■ Upon a careful review of the authorities cited herein and others, we hold that a court, in defining a parent's right to visitation, is charged with giving paramount consideration to the welfare of the child involved. Furthermore, this Court is of the opinion that the right of a parent, not in custody of his or her child, to visit that child may not ordinarily be made dependent upon the payment of child support by that parent. However, when a court finds that the parent's refusal to make child support payments is contumacious, or willful or intentional, that parent's visitation rights may be reduced or denied, if the welfare of the child so requires.

■■■ In the action before this Court, the circuit court, upon the evidence before it, erred in denying visitation rights to the appellant. Specifically, the record contains no evidence to indicate that the appellant contumaciously or willfully or intentionally failed to support his children. Rather, the record indicates that the appellant was unemployed during most of the period in question, for reasons not apparent in the record, and that a circuit court order was never entered directing the appellant to pay a specified amount of child support.

There is nothing in the record to indicate that visitation in this action would be detrimental to the children. Although the appellant failed to make support payments to those children, we decline, in view of the importance of the parent-child relationship, to affirm the denial of visitation in this action. The welfare of children in actions similar to the action before this Court ordinarily requires preservation of the visitation privilege as a means to safeguard the parent-child relationship.

Upon all of the above, therefore, the final order of the Circuit Court of Marion County is hereby reversed, and this action is remanded to that court for proceedings consistent with this opinion.

Reversed and remanded.