306 S.E.2d 230

**John Curtis DEMPSEY**

v.

**Betty Ann DEMPSEY.**

No. 15696.

Supreme Court of Appeals of
West Virginia.

March 14, 1983.

Dissenting Opinion July 27, 1983.

Mark D. Nigh, Philippi, for appellant.

Regina L. Charon, Morgantown, for appellee.

PER CURIAM:

Betty Ann Dempsey appeals from a December 23, 1981 final order of the Circuit Court of Taylor County granting John Curtis Dempsey custody of Jay Dempsey, eight year old son of the parties. Appellant contends that she is entitled to custody as the child's fit primary caretaker under

the rule established in *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981). We do not believe that, on the facts of this case, either parent was entitled to claim the status of primary caretaker. Further, we are of the opinion that the trial court did not abuse its discretion in awarding custody to the appellee in the absence of any primary caretaker presumption to the contrary. Accordingly, we affirm the trial court's award of custody to the appellee.

Jay was born to the parties in 1974 when they were living in Delaware. From 1974 until January of 1978 appellee worked outside the home and appellant stayed at home and cared for Jay and Jennifer, appellant's older child by a previous marriage. In 1978 appellee left Delaware for West Virginia, leaving his wife and child behind. He paid less than $300 in support during the period between January of 1978 and October of 1980.

In October of 1980, appellant had fallen so far behind on her bills that she felt she could no longer care for Jay or Jennifer. She called appellee and asked him to care for them. There is some dispute as to whether appellant expressed that this relinquishment of custody was a temporary one. At any rate, since October of 1980 appellee has had custody.

In January of 1981 appellee filed for divorce, which was granted in April of that year. The trial judge withheld a decision regarding custody pending a hearing, which was held in September of 1981. The trial court issued a letter opinion in October which was incorporated by reference in a December 23, 1981 order, which order also set forth visitation rights accorded appellant. Among other findings the trial judge concluded that "both the mother and father have provided primary care to the child," and that neither was entitled to the primary caretaker presumption.

■ In Syllabus Point 3 of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981) we stated:

"The primary caretaker is that natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child."

*Garska* enumerated several factors to be considered by the trial court in arriving at its determination of which, if either, parent is entitled to the primary caretaker presumption. We recognized, however, that in some custody disputes the presumption is inapplicable:

"[i]n those custody disputes where the facts demonstrate that child care and custody were shared in an entirely equal way, then indeed no presumption arises and the court must proceed to inquire further into relative degrees of parental competence." *Garska, supra,* 167 W.Va. at 70, 278 S.E.2d at 363.

The trial court concluded that child care and custody were shared sufficiently by appellee during the year before the custody determination to remove the presumption to which appellant would otherwise have been entitled. During this period, appellee shared the child care and custody with his new wife, whom he had married in June of 1981. Because he was unemployed much of the time preceding the custody hearing, he participated substantially in Jay's care. Certainly appellant had assumed these duties for a longer period of time, but we feel that length of time alone is not determinative of whether the presumption should attach. In the circumstances presented here we find that the trial court did not err in ruling that neither party was entitled to the primary caretaker presumption.

■ In view of the fact that the primary caretaker presumption was inapplicable, the trial judge turned to a determination of which parent was better suited to have custody of Jay. The best interests of the child must be the court's guide in this determination. *See, W.Va.Code,* 48–2–15 [1980]. The evidence indicated that upon arriving in West Virginia Jay was a disobedient child and a poor student. After several months in appellee's household he became more obedient and his teacher testified that his schoolwork improved. Further, appellee's neighbors testified as to Jay's improved attitude and increased happiness in appellee's care. We are mindful

of the difficulty which appellant may have faced in producing witnesses from her Delaware home at the Taylor County, West Virginia hearing. Nevertheless, the trial judge ruled that awarding custody to the appellee best served Jay's interests and we cannot say that he abused his discretion in so ruling.

Finally, we address the issue of appellant's right to visitation. The parties reached an agreement as to visitation, which was reflected in an order entered on December 23, 1981. The agreement required the appellant to pay for travel expenses incurred as a result of visitation. The only instance of difficulty in the agreed visitation scheme arose when the appellant failed to pay for Jay's return from one visitation period. As a result, appellee was required to travel to Delaware to get Jay at his expense, and the boy missed three days of school.

 Appellee sought and obtained an order requiring appellant to show cause why she should not be held in contempt for violating the visitation agreement approved by the court. Appellant did not respond or appear, resulting in the trial court's July 13, 1982 order finding her in contempt and terminating all visitation. While the court's displeasure over appellant's failure to respond to the order to show cause is understandable, complete revocation of visitation is an inappropriate sanction.

We have recently written on the subject of visitation rights in *Ledsome v. Ledsome*, 171 W.Va. 602, 301 S.E.2d 475 (1983). There we considered the effect which denying visitation has on child and parent. We concluded that visitation should not be denied or withdrawn lightly. The best interests of the child must be given paramount consideration in determining visitation. *Ledsome, supra.* (Syllabus point 1)

In the circumstances of this case the best interests of the child indicate that denying appellant visitation is inappropriate. In denying appellant all visitation the trial court abused its discretion. We reverse and remand with directions that the trial court reconsider its termination of visitation in light of the principles enunciated in *Ledsome.*

Affirmed in part;

Reversed and Remanded in part.

MILLER, Justice, dissenting:

I dissent from the majority opinion because it confirms the trial court's award of custody of an eight-year-old child to the appellee-father, John Dempsey. I believe the trial court was in error when it found both parents to be primary caretakers and then applied the best interest of the child test. The evidence to my mind clearly shows that the mother was the primary caretaker until she had to relinquish temporary custody of the child to the father. The reason for the relinquishment was that Mr. Dempsey abandoned her and the child in Delaware and failed to send her any support money when he returned to this State. In order to alleviate her destitute situation, she arranged to have the child temporarily taken by him, and his parents seem to have been the ones who actually had the daily care of the child. Once the father obtained the child, he instituted the divorce action in this State. These facts can be gleaned even from the majority's opinion except they are presented in more dulcet tones.

Certainly, we pervert the principle of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), if we permit a primary caretaker to lose her favored role simply because her husband abandons her and his child without any meaningful support, thereby, forcing her to give up physical custody of the child. This, by the way, was what happened in *Garska*, but the mother was able to move in with her parents. Presumably, if Mrs. Dempsey had delivered temporary custody of the child to the Delaware Department of Welfare, she could have avoided the problem. Because she chose a more humane approach, she has now lost her child, a singularly inequitable result.