*1378
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 Appellant Carol Westgate (now Carol Kemm) (“Carol”) and respondent Murray Westgate (“Murray”) battled over child support and custody of their daughter for over ten years since Murray filed for divorce in December 1982. In the divorce decree, the district court awarded Carol primary physical custody subject to reasonable visitation and ordered Murray to pay $200 per month in child support. Because Carol was a flight attendant, she was forced to move from Las Vegas to Memphis, Tennessee, when Republic Airlines (now Northwest Airlines) closed its home base operation in Las Vegas. Murray stopped paying child support, and Carol refused to allow visitation based on allegations made by their daughter that Murray molested her on her last visit to Las Vegas and because of alleged difficulties in arranging for airline flights for their daughter. Medical examiners in Tennessee found allegations of abuse to be credible, although charges of abuse lodged in a Tennessee court were eventually dismissed.
 

 In October 1985 the district court cut Murray’s child support obligation in half to penalize Carol primarily for violating Murray’s visitation rights. In October 1987 Carol moved the district court to increase support to conform to newly adopted Nevada guidelines. In May 1988, after extensive review of the circumstances of the litigants, a domestic relations referee recommended to the district court that child support be increased to $400 per month calculated from January 1988. The district court vacated the referee’s findings and recommendations because it felt that the referee did not consider Carol’s failure to allow visitation or the income of Carol’s new husband, an airline pilot. Two years later, after conducting extensive hearings concerning visitation, the referee once again reviewed the issue of support and made the same recommendations. Murray did not oppose the recommendations and the district court ordered an increase in support. When Carol attempted to reduce arrearages to judgment, Murray objected, claiming that he did not get an opportunity to contest the recommendations. The district court vacated its own order and directed the referee to once again make findings and recommendations.
 

 Following a number of recusals and formation of the district court’s family court division (“family court”), the family court reviewed the issue of child support and refused to modify the district court’s orders, basing its opinion primarily on Noble v.
 
 *1379
 
 Noble, 86 Nev. 459, 470 P.2d 430 (1970), a case which predated modern child support guidelines and noted that a district court has broad discretion to modify child support awards. The family court calculated child support arrearages based upon a $200 per month figure until the time that the district court ordered support cut in half, and then $100 per month thereafter. Carol eventually garnished some of this amount from Murray’s wages.
 

 Carol appeals, arguing that the family court erred because (1) child support under the Nevada guidelines cannot be reduced to punish one spouse for refusing to allow visitation, and (2) the district court’s signed order increasing child support was a final order precluding relitigation of the issue. Because we agree that child support cannot be used to punish a spouse for refusing visitation, we need not address Carol’s second argument. Accordingly, we reverse the judgment of the family court and remand the case with instructions.
 

 DISCUSSION
 

 Payment of child support is governed by NRS 125B.080. This statute requires the district court to apply the guidelines set forth in NRS 125B.070 to determine the amount of support in any request for support made after July 1, 1987.
 
 See
 
 NRS 125B.080(l)(a)-(b). For one child, these guidelines require support to be made in the amount of eighteen percent of the obligor’s income up to $500 per month. NRS 125B.070(1)(b)(1)-(5). A court has limited discretion in deviating from these guidelines.
 
 See
 
 Lewis v. Hicks, 108 Nev. 1107, 1111, 843 P.2d 828, 831 (1992). If a court chooses to deviate, it must base its deviation on the following factors set forth, in relevant part, in NRS 125B.080(9):
 

 (a) The cost of health insurance;
 

 (b) The cost of child care;
 

 (c) Any special educational needs of the child;
 

 (d) The age of the child;
 

 (e) The responsibility of the parents for the support of others;
 

 (f) The value of services contributed by either parent;
 

 (g) Any public assistance paid to support the child;
 

 (h) Any expenses reasonably related to the mother’s pregnancy and confinement;
 

 (i) The cost of transportation of the child to and from visitation if the custodial parent moved with the child from the jurisdiction of the court which ordered the support and the noncustodial parent remained;
 

 (j) The amount of time the child spends with each parent;
 

 
 *1380
 
 (k) Any other necessary expenses for the benefit of the child; and
 

 (l) The relative income of both parents.
 

 The new support guidelines intentionally depart from traditional practice in which courts exercised broad discretion in determining child support awards.
 
 Lewis,
 
 108 Nev. at 1111, 843 P.2d at 831.
 

 The district court, as did the family court, relied upon an earlier line of cases validating this traditional practice to justify reducing child support to punish Carol.
 
 See Noble,
 
 86 Nev. at 459, 470 P.2d at 430. Carol argues in contrast that the issues of child support and visitation are separate.
 

 We conclude that Carol is correct. NRS 125B.080 does not list punishment for failure to provide visitation as a reason to cut child support. Such punishment is, in fact, inconsistent with these guidelines. Nothing in the record indicates that the domestic relations referee did not follow the Nevada statutory formula to the letter when Carol sought modification according to new Nevada guidelines in 1987.
 

 Having decided that the lower court was in error, we need not address whether the district court also erred in refusing to accept the referee’s findings when Murray did not timely object to them. We note, however, that Murray’s child support obligation must now be reduced to judgment. NRS 125.180 provides that
 

 [wjhen either party to an action for divorce, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the district court
 
 may
 
 make an order directing entry of judgment for the amount of such arrears, together with costs and a reasonable attorney’s fee.
 

 (Emphasis added.) We relied upon this statute in Libro v. Walls, 103 Nev. 540, 746 P.2d 632 (1987), to determine that an ex-husband could not be forced to pay child support arrearages when the ex-wife fraudulently withheld from him the knowledge that the ex-husband was not the biological father.
 
 Id.
 
 at 542. We have also concluded that equitable defenses such as waiver and estoppel may be considered by the district court in exercising its discretion to reduce arrearages to judgment. Parkinson v. Parkinson, 106 Nev. 481, 483, 796 P.2d 229, 231 (1990). These considerations are not inconsistent with child support guidelines. And, of course, the best interest of the child should be of primary importance.
 
 See
 
 NRS 125.510(l)(a); NRS 125B.090. We con-
 
 *1381
 
 elude that the best interest of the child cannot be served by refusing to reduce arrearages to judgment as a form of punishment for failing to allow visitation.
 
 See
 
 Appert v. Appert, 341 S.E.2d 342, 349 (N.C. Ct. App. 1986) (noting that to condition payment of child support upon compliance with visitation rights is inherently detrimental to the best interest of the minor child).
 

 [Headnote 5]
 

 In reviewing the case at bar, the family court considered many equitable factors, but seemed primarily concerned with Carol’s alleged fraudulent conduct in justifying the district court’s original order to cut child support and in refusing to grant arrearages based on a modified award. Some authority, again founded in cases predating the Nevada support guidelines, exists to support the family court’s position.
 
 See, e.g.,
 
 Melahn v. Melahn, 78 Nev. 162, 370 P.2d 213 (1962). Unfortunately, this authority provides a means of circumventing child support guidelines by allowing a court to refuse to reduce support arrearages to judgment in order to punish one spouse for failure to allow visitation. We cannot allow this. Furthermore, although fraudulent conduct may indeed justify cutting support, no clear indication of fraud exists in this case.
 

 CONCLUSION
 

 We hold that a failure to comply with the terms of a visitation agreement cannot be used as a reason to reduce a child support obligation or to refuse reducing child support arrearages to judgment.
 
 Noble, Melahn
 
 and other cases predating adoption of the Nevada child support guidelines are hereby overruled to the extent that they can be read to support a contrary proposition. We therefore reverse the family court judgment and remand the case with the following instructions: (1) to enter an order adopting the domestic relations referee’s May 1988 recommendation that Murray pay $400 per month in child support from January 1988 pursuant to Nevada child support guidelines; and (2) to consider his daughter’s best interest and any other equitable factors consistent with the Nevada child support guidelines in determining what amount of support arrearages should be reduced to judgment. Murray is entitled to an offset for any payment of support from January 1988 to the present.