**Katrina Rae CARTER, Plaintiff Below,**

v.

**Henry Denzil CARTER, Defendant Below, Appellee,**

**West Virginia Department of Health and Human Resources, Child Support Enforcement Division, Appellant.**

**No. 23253.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 1996.

Decided Nov. 18, 1996.

---

R. Jeffrey Johnson, West Virginia Department of Health and Human Resources, Child Support Enforcement Division, Charleston, for the Appellant.

James W. St. Clair, St. Clair & Levine, Huntington, for Katrina Rae Carter.

Henry Denzil Carter, Pro Se.

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

McHUGH, Chief Justice:

In this appeal,[1] the West Virginia Department of Health and Human Resources, the Child Support Enforcement Division,[2] by its counsel, seeks reversal of an order entered January 23, 1995 in the Circuit Court of Wayne County. In that order, the circuit court, *inter alia*, reduced the amount of child support arrearage owed Katrina Rae Carter by her former husband, Henry Denzil Carter, on the ground that Mrs. Carter had discouraged visitation between Mr. Carter and the parties' two children.

Upon consideration of the Child Support Enforcement Division's (hereinafter "Division") petition for appeal and brief[3] and all matters of record, the order of the circuit court is reversed.

–I.

Katrina Rae Carter and Henry Denzil Carter were divorced on February 9, 1981 in the Circuit Court of Wayne County. The parties' marriage produced two sons, one of whom was born on January 9, 1978 and the other, on August 16, 1980. Under the provisions of the divorce decree, Mrs. Carter was "awarded sole and exclusive care, custody and control of the infant children of the parties, and ... [Mr. Carter] [was] awarded reasonable and seasonable visitation with the children, to be exercised and restricted to the residence of [Mrs. Carter], or such other place or upon such conditions that she may designate[.]" The divorce decree further provided that Mr. Carter "shall pay to [Mrs. Carter] the sum of $140.00 per month, $70.00 each two weeks, as and for support and maintenance of the infant children, commencing on the 9th day of January, 1981, payable in advance, and to continue in like manner hereafter, until further order of the Court."

2. *See W.Va.Code,* 48A–2–12 [1995] (establishing the child support enforcement division in the department of health and human resources), *et seq.*

3. The Division is the only party that filed a brief in this case.

On July 7, 1982, the West Virginia Department of Welfare, as the assignee of Mrs. Carter pursuant to *W. Va.Code*, 9–3–4 [1979], filed a petition for a hearing for modification of the divorce decree and for decretal judgment in the amount of $1,400, the amount of child support payments owed but not made to Mrs. Carter at that time, plus interest and costs.[4] The petition further sought that a child support obligation of $140 per month, as opposed to $70 every two weeks, be imposed upon Mr. Carter. Mr. Carter failed to appear and by order entered September 10, 1982, the circuit court granted the Department of Welfare's motion.

On April 30, 1994, the Office of the Child Advocate, on behalf of Mrs. Carter and her children, filed a petition for a contempt order against Mr. Carter, pursuant to *W. Va.Code*, 48–2–22 [1984][5] and 48A–5–5 [1986],[6] alleging, *inter alia*, that Mr. Carter owed his former wife $23,660 in unpaid child support. At a December 27, 1994 hearing on the matter, Mrs. Carter testified that, following the divorce, she and the children occupied at least six different residences in West Virginia and Virginia. Though Mrs. Carter did not reveal to Mr. Carter her various addresses and telephone numbers, she and her mother both testified that her whereabouts were at all times capable of being ascertained through Mrs. Carter's mother. Mr. Carter testified that he made several attempts to see his children and to make child support payments to Mrs. Carter. However, according to Mr. Carter, Mrs. Carter thwarted his

efforts to exercise his visitation privileges and likewise refused to accept the few child support payments he tried to make.

Upon conclusion of all the testimony, the trial court commented:

Well, there is no question in this matter that she has done what she can do to keep him from visiting with the children. And there is no question that he has pretty well done what he could do to keep from paying the support.

Certainly if I take everything that he says is true, there is still not a diligent effort to enforce visitation in this matter. You know, it's very easy to come in and say, 'I have tried. I tried to hire a lawyer and all of this.' But I'm not impressed with the efforts that were made. . . . It's strange how being brought into court intensifies your efforts for visitation and child support.

The trial court concluded, "[g]iving [Mr. Carter] the benefit of all doubts, . . . he is in arrears in the amount of $16,800 in payment of the child support." The trial court further concluded that it was "permitted to punish [Mrs. Carter] . . . for her failure or refusal to allow [Mr. Carter] to visit with the children[.]" The trial court then determined that Mrs. Carter "should be punished as at least one-fourth at fault in these sums . . . bring[ing] the amount to the arrearage of $4,000." Accordingly, in its January 23, 1995 order, the trial court found, *inter alia:*

---

**4.** In its July 7, 1982 petition, the Department of Welfare indicated that since May of 1981, it had expended "in excess of the arrearage of [Mr. Carter], in order to provide the necessities of life of the said children in the absence of the fulfillment by [Mr. Carter] of his legal obligation to so provide. The [Department of Welfare] has, to date, paid for such support for the said children in an amount in excess of . . . ($2,060.00), said sums being paid at a monthly rate of . . . ($206.00) [.]"

**5.** *W. Va.Code*, 48–2–22 [1984], "Proceedings in Contempt," provides, in pertinent part:

(d) Regardless of whether the court or jury finds the defendant to be in contempt, if the court shall find that a party is in arrears in the payment of alimony, child support or separate maintenance ordered to be paid under the provisions of this article, the court shall enter

judgment for such arrearage and award interest on such arrearage from the due date of each unpaid installment.

**6.** *W. Va.Code*, 48A–5–5 [1986] states, in relevant part:

(a)(1) In addition to or in lieu of the other remedies provided by this article for the enforcement of support orders, the office of the children's advocate may commence a civil or criminal contempt proceeding in accordance with the provisions of . . . [*W. Va.Code*, 48–2–22] . . . against an obligor who is alleged to have willfully failed or refused to comply with the order of a court of competent jurisdiction requiring the payment of support. Such proceeding shall be instituted by filing with the circuit court a petition for an order to show cause why the obligor should not be held in contempt.

That [Mrs. Carter], in her petition, prayed for relief in the amount of $23,600.00 for past due or matured installments of [Mr. Carter's] child support obligations.

That the authority of this Court to *modify child support payments can be applied retrospectively only in instances of judicially cognizable circumstances.*

That the evidence does not fully substantiate [Mr. Carter's] claim that he diligently attempted to locate his children and discharge his support obligations. Consequently, his request for dismissal of [Mrs. Carter's] petition is denied.

That after consideration of the evidence, the Court finds [Mr. Carter's] true arrearage is $16,800.00, not $23,600.00

That [Mrs. Carter's] actions with regard to discouraging [Mr. Carter's] visitation with his children merit punitive measures. Consequently, [Mr. Carter's] total and complete liability for past due child support is hereby set at $12,000.00.[7]

(emphasis and footnote added). It is this January 23, 1995 order [8] that is the subject of this appeal.

## II.

The sole issue for our review is whether the trial court committed error in reducing the amount of child support arrearage to punish Mrs. Carter for discouraging visitation between Mr. Carter and the parties' two children.

### A.

■ In West Virginia, "child support payments vest as they accrue[,]" *Hopkins v. Yarbrough,* 168 W.Va. 480, 485, 284 S.E.2d 907, 910 (1981), and matured installments thereof stand as decretal judgments against the party owing such support payments. *W. Va.Code,* 48A–5–2(a) [1991] provides, *inter alia,* that "[t]he total of any matured, unpaid installments of child support required to be paid by an order entered or modified by a court of competent jurisdiction ... shall stand, by operation of law, as a decretal judgment against the obligor owing such support." *Id.,* in relevant part. We articulated this point in syllabus point 5 of *Robinson v. McKinney,* 189 W.Va. 459, 432 S.E.2d 543 (1993):

'Matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as "decretal judgments" against the party charged with the payments.' Syl. pt. 1, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987).

*See* syl. pt. 2, *Belcher v. Terry,* 187 W.Va. 638, 420 S.E.2d 909 (1992); syl. pt. 2, *Lauderback v. Wadsworth,* 187 W.Va. 104, 416 S.E.2d 62 (1992); syl. pt. 1, *Hudson v. Peck,* 183 W.Va. 300, 395 S.E.2d 544 (1990). *See also Scott v. Wagoner,* 184 W.Va. 312, 314 n. 5, 400 S.E.2d 556, 558 n. 5 (1990); *Sauls v. Howell,* 172 W.Va. 528, 530, 309 S.E.2d 26, 28 (1983).

■ A circuit court's power to modify child support awards other than prospectively is limited. Such power may only be exercised in instances of fraud or some other judicially cognizable circumstance in procuring the original child support award. As we held in syllabus point 1 of *Robinson, supra:*

'The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a

---

**7.** A $4,000 reduction of the $16,800.00 child support arrearages would result in arrearages of $12,800.00, not $12,000.00. However, the Division does not raise the trial court's mathematical error in this appeal.

**8.** The January 23, 1995 order further required Mr. Carter to pay to Mrs. Carter, in addition to the $140 monthly child support payment, $200 per month beginning January 1, 1995 until the $12,000 arrearage is paid in full. The circuit court order further concluded that Mr. Carter was not liable for either pre- or post-judgment interest. The Child Advocate did not object to this ruling below nor does it presently challenge it as violative of *W. Va.Code,* 48A–5–2(a) [1991] ("The amount of unpaid support shall bear interest from the date it accrued [.]" *Id,* in relevant part). *See also Goff v. Goff,* 177 W.Va. 742, 747, 356 S.E.2d 496, 501 (1987) ("Matured alimony and child support installments are judgments for money which accrue statutory interest from the date the payments are due. Statutory interest is mandatory[.]").

circuit court is without authority to modify or cancel accrued alimony or child support installments.' Syl. pt. 2, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987).

*See* syl. pt. 2, *Woods v. Guerra,* 187 W.Va. 487, 419 S.E.2d 900 (1992); syl. pt. 3, *Lauderback, supra;* syl. pt. 5, *Moss v. Bonnell,* 186 W.Va. 301, 412 S.E.2d 495 (1991); syl. pt. 2, *Hudson, supra; W. Va.Code,* 48A–5–2(a) [1991] ("A child support order shall not be retroactively modified so as to cancel or alter accrued installments of support." *Id.,* in relevant part.); *Brown v. Brown,* 240 Va. 376, 397 S.E.2d 837, 839 (1990); *Conrad v. Conrad,* 208 Neb. 588, 304 N.W.2d 674, 675 (1981). *See also In re Marriage of Betts,* 155 Ill.App.3d 85, 107 Ill.Dec. 759, 507 N.E.2d 912, 923 (1987) (" '[W]hen a court decrees that an amount of … support is to be paid, the court cannot reduce it retroactively. As each installment becomes due, the right to that installment is vested.' " (citation omitted)); *Scott v. Sylvester,* 225 Va. 304, 302 S.E.2d 30, 31(Va.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 395, 78 L.Ed.2d 338 (1983) ("[E]ach [child support] installment becomes a vested property right the moment it falls due and, as such, is immune from modification.").

 In the case now before this Court, the trial court, in its January 23, 1995 order, indicated that its authority "to modify child support payments can be applied retrospectively only in instances of judicially cognizable circumstances." As this Court stated above, however, such judicially cognizable circumstances must relate to *the procuring of the original award.* Syl. pt. 1, *Robinson, supra.* The trial court made clear that, by reducing the child support arrearages by $4,000, it intended to punish Mrs. Carter for *discouraging visitation between Mr. Carter and the children.* Mrs. Carter's actions regarding her former husband's visitation privileges occurred subsequent to the original order awarding child support, in no way relating to the procuring of the original award. The trial court was, therefore, without authority to reduce the amount of child support arrearages owed by Mr. Carter.

## B.

 A fundamental concept in the public policy of this State is that the best interest and welfare of the children are paramount when deciding matters of visitation, child support and child custody. *See Carter v. Carter,* 196 W.Va. 239, 246, 470 S.E.2d 193, 200 (1996); *Robinson,* 189 W.Va. at 463, 432 S.E.2d at 547; *Cleo A.E. v. Rickie Gene E.,* 190 W.Va. 543, 546, 438 S.E.2d 886, 889 (1993); *Gardner v. Gardner,* 184 W.Va. 260, 400 S.E.2d 268 (1990); *Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989); *Tucker v. Tucker,* 176 W.Va. 80, 82, 341 S.E.2d 700, 702 (1986); syl. pt. 1, *Ledsome v. Ledsome,* 171 W.Va. 602, 301 S.E.2d 475 (1983). In particular, it is recognized that child support payments are exclusively for the benefit and economic best interest of the child. *Broyles v. Broyles,* 711 P.2d 1119, 1125 (Wyo.1985); *Com. Dept. of Social Services v. Hogge,* 16 Va.App. 520, 431 S.E.2d 656, 657 (1993); *Dillard v. Dillard,* 104 N.M. 763, 727 P.2d 71, 76 (Ct.App.1986). *See McReynolds v. McReynolds,* 787 P.2d 530, 532 (Utah.Ct.App.1990) (" 'Court-ordered child support is an obligation imposed for the benefit of the children, not the divorcing spouse.' " (*quoting Race v. Race,* 740 P.2d 253, 256 (Utah 1987))). Likewise, "the primary reason for visitation is the benefit to be derived by the child from associating with the noncustodial parent." *Appert v. Appert,* 80 N.C.App. 27, 341 S.E.2d 342, 349 (1986). *See In re Marriage of Avery,* 251 Ill.App.3d 648, 190 Ill.Dec. 914, 622 N.E.2d 1231, 1235 (1993). Indeed, we held in syllabus point 9 of *White v. Williamson,* 192 W.Va. 683, 453 S.E.2d 666 (1994): "In considering visitation issues, the courts must also be mindful of facilitating the right of the non-custodial parent to a full and fair chance to continue to have a close relationship with his children."

It is the general rule in most jurisdictions that the duty to pay child support and the right to exercise visitation, though closely linked in that they both benefit the child, are not interdependent, *Ledsome, supra; Appert,* 341 S.E.2d at 350; *Conrad,* 304 N.W.2d at 676; *Dooley and Dooley,* 30 Or.App. 989, 569 P.2d 627, 629 (1977); *Emerick v. Emerick,* 28 Conn.App. 794, 613 A.2d 1351, 1355 , *cert. denied,* 224 Conn. 915, 617 A.2d 171 (1992); *Hester v. Hester,* 663 P.2d 727, 729 (Okl.

1983); *Macaluso v. Macaluso,* 509 So.2d 201, 202 (La.Ct.App.1987), and should be separately enforced. *Hester,* 663 P.2d at 729. *See* 3 *Child Custody and Visitation Law and Practice* § 16A.01—02 [1] (1996); Note, *Making Parents Behave: The Conditioning of Child Support and Visitation Rights,* 84 Colum. L.Rev. 1059, 1069 (1984).

In *Ledsome,* 171 W.Va. at 604–05, 301 S.E.2d at 478, this Court, acknowledging the child's best interest and the preservation of the parent-child relationship to be of utmost importance, stated the following in addressing whether a noncustodial parent's visitation rights could be denied for nonpayment of child support:

'[t]he rights of visitation should not be denied a parent to punish him because of his failure to pay support money for the child. The paramount reason for visitation is the benefit to be derived by the child from associating with its parents and its welfare should not be jeopardized by an order conditioned upon payment of support money or alimony even though such order might prove effective as a collection device.'

(*quoting Block v. Block,* 15 Wis.2d 291, 112 N.W.2d 923, 927 , *cert. denied,* 368 U.S. 906, 82 S.Ct. 186, 7 L.Ed.2d 100, *reh'g denied,* 368 U.S. 945, 82 S.Ct. 383, 7 L.Ed.2d 341 (1961)). Accordingly, we held that "[t]he right of a parent, not in custody of his or her child, to visit that child may not ordinarily be made dependent upon the payment of child support by that parent." *Id.* at syl. pt. 2, in relevant part.[9]

■■ Just as visitation privileges are not to be conditioned upon the payment of child support, *Id; Id,* 171 W.Va. at 604–05, 301 S.E.2d at 478, a parent's duty to pay child support likewise may not be made contingent upon that parent's exercise of visitation privileges. *See Appert* 341 S.E.2d at 350. *See also Nisbet v. Nisbet,* 102 N.C.App. 232, 402 S.E.2d 151, 154 , *cert. denied,* 329 N.C. 499, 407 S.E.2d 538 (1991). Therefore, a parent charged with paying child support is "not justified in failing to pay support, even when there has been a denial of visitation privileges" by the custodial parent. *Macaluso,* 509 So.2d at 202. *See Coleman v. Burnett,* 169 Ga.App. 297, 312 S.E.2d 627, 628 (1983); *Conrad,* 304 N.W.2d at 676; *Emerick,* 613 A.2d at 1355; *Nisbet,* 402 S.E.2d at 154.

■ Moreover, in that the duty to pay child support and the right to exercise visitation are not interdependent, a custodial parent's interference with the visitation privilege of the noncustodial parent may not be used as a reason to reduce the amount of child support arrearage owed by the noncustodial parent. *See Westgate v. Westgate,* 110 Nev. 1377, 887 P.2d 737 (1994). *See also Dillard,* 727 P.2d at 76; *Hogge,* 431 S.E.2d at 657. To conclude otherwise would be detrimental to the best interests of the child, for whose benefit child support and visitation have been ordered. *See Ledsome, supra; Appert,* 341 S.E.2d at 349; *Dooley,* 569 P.2d at 629; *Hester,* 663 P.2d at 728.

■ In the present case, the trial court reduced the amount of child support arrearage owed by Mr. Carter to punish Mrs. Carter for discouraging visitation between Mr. Carter and the parties' two children. We hold that even though a custodial parent has interfered with or discouraged visitation between a noncustodial parent and the parties' children, a trial court may not reduce the amount of child support arrearages owed by the noncustodial parent in order to punish the custodial parent for such interference or discouragement of visitation.[10]

9. We further held, in syllabus point 2 of *Ledsome,* that "when a court finds that the parent's refusal to make child support payments is contumacious, or willful or intentional, that parent's visitation rights may be reduced or denied, if the welfare of the child so requires." We note, however, that this appeal does not present the issue of whether Mr. Carter refused to make child support payments contumaciously, willfully or intentionally, such that his visitation rights should be reduced or denied.

10. We point out, however, that the noncustodial parent who is refused the opportunity to exercise visitation privileges with his or her child is not without remedy. The noncustodial parent in such a situation should pursue the appropriate sanction or remedy in the circuit court originally granting the parties' divorce, as such court is vested with continuing jurisdiction to modify its original order regarding child support and child custody, as the circumstances of the parties or the welfare of the children may require. *W.*

## III.

For the reasons discussed above, the January 23, 1995 order of the Circuit Court of Wayne County is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

RECHT, Justice, sitting by temporary assignment.

Va.Code, 48–2–15(e) [1996]; *Segal v. Beard*, 181 W.Va. 92, 97, 380 S.E.2d 444, 449 (1989); *State ex rel. Ravitz v. Fox*, 166 W.Va. 194, 197, 273 S.E.2d 370, 372 (1980). *See Scott*, 184 W.Va. at 315, 400 S.E.2d at 559; syl. pt. 6, *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978) ("Child support is always subject to continuing judicial modification."). *See also Acord v. Acord*, 164 W.Va. 562, 564, 264 S.E.2d 848, 850 (1980). For example, the noncustodial parent who is refused visitation privileges could institute civil contempt proceedings to enforce his or her visitation rights, *Appert*, 341 S.E.2d at 348; *In Interest of D.F.W.*, 497 So.2d 925, 926 (Fla.Ct.App. 1986) or, by proper motion, could seek to terminate or modify custody or to reduce child support. *In re Marriage of Damico*, 7 Cal.4th 673, 29 Cal.Rptr.2d 787, 872 P.2d 126, 128 (1994); *Williams v. Williams*, 109 N.M. 92, 781 P.2d 1170, 1176 (Ct.App.1989).

In this case, the original divorce decree entered in Wayne County Circuit Court expressly provided that the support and maintenance of the minor children were to be paid by Mr. Carter "until further order of the Court." Despite Mr. Carter's assertion that Mrs. Carter interfered with his visitation privileges for more than a decade, Mr. Carter, according to the record before us, failed to seek any legal recourse against her. Instead, Mr. Carter either failed or refused to make child support payments for many years, allowing such payments to accrue.