518 S.E.2d 363

**Elaine M. RUNNER, Plaintiff below, Appellee,**

v.

**Eric Mark HOWELL, Defendant below, Appellee,**

and

**The State of West Virginia Department of Health & Human Resources, Child Support Enforcement Division, Intervenor below, Appellant.**

No. 25342.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1999.

Decided July 9, 1999.

---

Daniel J. Calvert, Esq., Bureau for Child Support Enforcement, Weston, West Virginia, Attorney for Appellant.

Scott Curnutte, Esq., Elkins, West Virginia, Attorney for Appellee Runner.

Bridgette R. Wilson, Esq., Busch & Talbott, L.C., Elkins, West Virginia, Guardian Ad Litem.

David H. Wilmoth, Esq., Elkins, West Virginia, Attorney for Appellee Howell.

PER CURIAM:

This case is before us on appeal of a final order of the Circuit Court of Randolph County, entered March 9, 1998. The appellant, the Department of Health and Human Resources Child Support Enforcement Division ("CSED"), seeks reversal of the circuit court's order that: (1) terminated appellee Eric Howell's ("Howell") parental rights of a child he fathered with appellee Elaine Runner ("Runner"), and (2) waived all past, present and future child support owed Howell on behalf of the child. Upon consideration of the record and briefs, we reverse the circuit court's March 9, 1998 order and remand the case for further proceedings.

I.

On August 11, 1986, Runner and Howell were married in Randolph County, West Virginia. They were the parents of one child who was born on July 13, 1987. Runner and Howell were divorced on September 15, 1988 by the Circuit Court of Randolph County. Under the provisions of the divorce decree, Runner was awarded custody of the minor child and Howell was ordered to pay child

support in the amount of $150.00 per month commencing on September 15, 1988.

Howell failed to pay the required child support and accumulated a substantial child support arrearage.[1] Runner made an application to the Child Advocate Office[2] to collect the unpaid child support. Several enforcement efforts were unsuccessful.

On November 15, 1994, Runner and Howell entered into an agreement terminating both Howell's parental rights to the minor child and his obligation to pay child support. The agreement terminated all past, present and future child support due and owing from Howell to Runner. The agreement was presented to the circuit court, and was approved and incorporated into an order dated September 22, 1995.

A copy of the September 22, 1995 order was forwarded to the CSED. The CSED filed a petition to "Intervene, Vacate Order, and Reinstate Child Support," along with a motion for a guardian ad litem to be appointed to represent the interests of the minor child. A hearing was held on July 1, 1996 with the circuit court granting the CSED's petition to intervene by order dated July 12, 1996; the court also appointed a guardian ad litem. The parties submitted briefs to the court, and by order dated October 10, 1996, the court vacated its September 22, 1995 order, thereby requiring Howell to resume child support payments. The court also left open the right for the parties to "schedule further hearings in this matter with the court."

On February 26, 1997, a status conference was conducted to discuss *inter alia* visitations of the child by Howell. The circuit court appointed Dr. Alan LaVoie, a psychologist, to perform an evaluation of the minor child and to advise the court of the child's best interest concerning visitation with the child's father, Howell.[3]

---

1. The order of March 9, 1998 indicates that Howell was in arrears for approximately $20,-045.51.

2. *See W.Va.Code*, 48A–2–12 [1995] establishing the Child Support Enforcement Division in the Department of Health and Human Resources.

3. The order directed that:

Dr. LaVoie be appointed by this court to conduct a psychological evaluation of the infant child, ... and make a recommendation to this court on the suitability and advisability of the infant child, ... having visitation with her father, Eric Mark Howell[.]

On April 1, 1997, a report was presented to the court by Dr. LaVoie. The report indicated that at that time it would not be in the child's best interest to have visitation with her father, Howell. The report also indicated that if in the future the minor child did decide to have contact with her father, supervised visitation should be arranged.

At a subsequent status conference on February 26, 1998, Runner, Howell and the guardian ad litem presented to the circuit court an agreed order which terminated the parental rights of Howell and terminated Howell's obligation to pay past, present and future child support. This agreed order provided for substantially the same arrangements as did the 1994 agreement between Howell and Runner. The court entered the agreed order on March 9, 1998. This appeal of the circuit court's order by the CSED followed.

## II.

■ In considering the appeal of a circuit court's order, this Court employs a two-prong deferential standard:

When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

Syllabus Point 1, *McCormick v. Allstate Insurance Company*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

■ The obligation to provide child support is based on the moral and legal duty of a parent to support one's child from birth. We have recognized that "child support payments are exclusively for the benefit and economic best interest of the child." *Carter v. Carter*, 198 W.Va. 171, 176, 479 S.E.2d 681, 686 (1996) (citations omitted). "The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." Syllabus Point 3, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991).

We also have held that " 'child support payments vest as they accrue,' and matured installments thereof stand as decretal judgments against the party owing such support payments." *Carter, supra*, 198 W.Va. at 175, 479 S.E.2d at 685 (citations omitted).

We have recognized that "courts have closely guarded children's rights since they are often voiceless." *Robinson v. McKinney*, 189 W.Va. 459, 463, 432 S.E.2d 543, 547 (1993). *W.Va.Code*, 48A–5–2(a) [1998] provides, in pertinent part:

(a) The total of any matured, unpaid installments of child support required to be paid by an order entered or modified by a court of competent jurisdiction ... shall stand, by operation of law, as a decretal judgment against the obligor owing such support.... A child support order shall not be retroactively modified so as to cancel or alter accrued installments of support.

■ A circuit court's power to modify accrued child support is limited to those instances of fraud or other judicially cognizable circumstance in procuring the original support award. As we have stated:

The authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments.

Syllabus Point 2, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987). *See also* Syllabus Point 2, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980) ("A circuit court lacks the power to alter or cancel accrued installments for child support.").

■ The prohibition against canceling accrued child support also extends to those circumstances where the parties have agreed to the cancellation. "A decretal child support obligation may not be modified, suspended, or terminated by an agreement between the parties to the divorce decree." Syllabus Point 2, *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420 (1986).

■ Howell relies on *Kimble, supra,* arguing that equitable estoppel should apply in this matter. Howell contends that he has relied upon his agreement with Runner to terminate his child support obligation to his detriment and should not now be made to pay the accrued child support.

In *Kimble* we did recognize that there may be circumstances in which the custodial parent would be estopped from seeking to enforce a decretal obligation. We stated that when there has been detrimental reliance by the noncustodial parent and "[w]here the welfare of the child has not been adversely affected, a custodial parent may be barred by the doctrine of equitable estoppel from seeking enforcement of the decretal obligation of a noncustodial parent[.]" Syllabus Point 3, in part, *Kimble, supra.*

In *Kimble* the noncustodial parent consented to the adoption of his child in exchange for the termination of his child support obligations. Approximately 1 year after the agreement, the custodial parent petitioned the court for delinquent child support payments because, unknown to the noncustodial parent, the custodial parent had not gone through with the adoption. We remanded the *Kimble* case for a determination of whether the adoption was not consummated due to an inaction of the custodial parent and whether the failure to consummate the adoption had operated to the detriment of the noncustodial parent.[4]

We have stated that "[i]t is essential to the application of the principles of equitable estoppel that the one claiming the benefit thereof establish that he relied, to his disadvantage or detriment, on the acts, conduct or representation of the one alleged to be estopped." Syllabus Point 2, *Helmick v. Broll,* 150 W.Va. 285, 144 S.E.2d 779 (1965).

Howell does not explicitly state how he relied to his detriment on a representation of Runner. It would appear that Howell contends that the agreement entered into in 1994 between him and Runner is the basis

for his reliance. This argument is without merit. An examination of the record establishes that Howell never paid child support, and that the non-payment of support predated the agreement by 6 years.[5] Moreover, the record also indicates that Runner had, over the years, pursued several avenues to obtain the support money owed her by Howell, including bringing an action in North Carolina. We can find no conduct of Runner's that would induce a reasonable person to believe that the child support obligation ordered in 1988 need not be paid. Consequently, the doctrine of equitable estoppel is not applicable in this matter.

We find that the circuit court lacked the authority to cancel the accrued child support obligation and that the doctrine of equitable estoppel is not applicable to the facts of this case. Consequently, the order of the circuit court canceling the accrued payments and interests is reversed.

The Court next must address the issue of the relinquishment by agreement and judicial termination of the parental rights of the father, Howell. The appellant CSED argues that the circuit court erred in terminating the parental rights of Howell without conducting an evidentiary hearing on the matter. We have held that a divorced parent cannot legally reduce or terminate a child support obligation by a contractual agreement. A reduction or termination may be accomplished only by court order. *Kimble,* 176 W.Va. at 50, 341 S.E.2d at 425.

■ In the instant case it is clear that no evidentiary hearing on the issue of support or termination of parental rights was held by the trial court, although there was a report filed by Dr. LaVoie that related solely to the issue of visitation. We note that Dr. LaVoie opined that it would not be in the best interests to require the minor child to have visitation with her father, but the opinion of Dr. LaVoie was silent as to the termination of Howell's parental rights.

4. The matter was also remanded for a determination of whether the welfare of the child would be adversely affected by the noncustodial parents' release from either his past or future support obligations.

5. The 1994 agreement was approved by the court in 1995 and was vacated by the court on October 10, 1996.

**364**

Some evidence must be taken to determine the child's best interests when the question of termination of parental rights is posited, especially in cases where it appears the primary reason for the termination is to cease the payment of child support. *Kimble* is again instructive on this issue. In *Kimble* the noncustodial parent had waived his parental rights in order for an adoption to proceed. In *Kimble* we stated that if "consent was alone was sufficient to release a responsible parent from the obligation to make support payments, unilateral consent could be fraudulently granted solely in order to avoid paying child support." *Kimble,* 176 W.Va. at 49, 341 S.E.2d at 424.

Were parties permitted to relinquish parental rights without judicial investigation, a Pandora's box would be opened, permitting coercive non-custodial parents to terminate their child support obligations without substantial involvement by the courts. We remanded *Kimble* for the need of additional evidence. The instant case is similar. The trial court failed to hold an evidentiary hearing on the issues of voluntary relinquishment of a parent's parental rights and whether such relinquishment was in the best interest of the child.

Accordingly, we find that the circuit court erred in failing to conduct an evidentiary hearing on the best interests of the minor child, regarding the termination of Howell's parental rights.

### III.

Therefore, for the reasons set forth above, the order of the Circuit Court of Randolph County is reversed and the case is remanded for reinstatement of all past accrued child support with interest, and for present and future child support as directed by *W.Va. Code,* 48A–1A–1 to 48A–1B–16 [1996]. This matter is further remanded for a determination of the child's best interest in regards to the termination of Howell's parental rights.

Reversed and Remanded.