584 S.E.2d 600

**REBECCA Lynn C., Plaintiff Below, Appellant,**

v.

**MICHAEL Joseph B., Defendant Below, Appellee.**

No. 30411.

Supreme Court of Appeals of West Virginia.

Submitted on Rehearing March 11, 2003.

Decided July 1, 2003.

Dissenting Opinion of Justice Davis July 9, 2003.

745

Rebecca Lynn C., Wheeling, Pro se.

Kimberly D. Bentley, Esq., Assistant Attorney General, Charleston, for Amicus Curiae WV Bureau for Child Support Enforcement.

Christopher P. Riley, Esq., Bailey, Riley, Buch & Harman, Wheeling, for Appellee.

PER CURIAM.

In this case we review a ruling by the Circuit Court of Ohio County that dismissed a mother's petition seeking to modify an order that had been entered in a paternity action. The order that the mother sought to modify terminated the duty of a biological father to pay child support, based on a lump-sum payment to the child's mother.[1] We reverse the circuit court's dismissal of the petition and remand for further proceedings.

I.

This case involves a child ("B.L.C.") who was born in May of 1988. The child's mother ("R.L.C.") is the appellant in this case, and the child's father ("M.J.B.") is the appellee; we use initials for privacy reasons.

The child's father and mother were never married and did not live together, and the father denied paternity after the child was born. The mother instituted paternity proceedings in circuit court. A paternity test showed that the appellant M.J.B. was the child's father, and the circuit court so found in the paternity proceeding, setting child support at $300.00 per month. Visitation was granted to the father, and the father was required to be responsible for reasonable health care insurance coverage for the child. The parties were ordered to share any uncovered medical expenses. On June 7, 1990, the court entered judgment for the mother in the amount of $7,200.00 for child support from June 1, 1988, to May 31, 1990, and for birth expenses of $1,541.38, for a total judgment of $8,741.38.[2]

Thereafter, following discussions between the father and the mother, the father pre-

1. This case was originally argued before this Court on November 6, 2002, and an opinion was issued on November 27, 2002. On January 16, 2003, we granted the appellant's petition for rehearing. Re-argument was on March 11, 2003, and this opinion is the result upon rehearing.

2. Our recital of the instant case's procedural history before the lower court is somewhat simplified, in order to focus on the main issues before us.

pared a "letter agreement" proposal whereby the father would pay a total payment of $35,000.00 to the mother, this sum to include the past-due support earlier ordered. In exchange, the mother would waive any claim to past or future child support of any sort. The money was payable as follows: $15,000.00 on or before September 1, 1990; $6,666.68 on or before March 1, 1991; $6,666.68 on or before September 1, 1991; and $6,666.68 on or before March 1, 1992. The agreement also provided that the father would agree to voluntarily terminate all of his parental rights and to execute any necessary consent to an adoption of the child. *See* note 6 *infra.*

The mother agreed to the proposal, and on November 14, 1990, a hearing before the Circuit Court of Ohio County was held for entry of an agreed order in the paternity proceeding. The father was represented by counsel, but apparently did not attend the hearing; the mother was not present at the hearing, nor was she represented by counsel. The child was not present nor represented by counsel or by a guardian *ad litem.* The child advocate's office did not appear, nor did it receive notice. The court entered an order incorporating the terms that were set forth in the proposed agreement. Payments pursuant to the agreement were apparently made on schedule, and apparently the father did not have any contact with the child thereafter.

Subsequently, in October of 1994, the child was diagnosed with Type I juvenile brittle diabetes, a condition that requires monthly medical treatment at an apparent current approximate monthly cost of $250.00 over and above the mother's health insurance payments. In January of 1996, the mother, apparently having been advised that the lump-sum agreement that she had entered into was legally unsound, filed (in the original paternity proceeding) a "Petition for Order to Set Aside Provisions in Settlement Agreement Regarding Waiver of Child Support

Obligation of [M.J.B.] and for Order to Institute Current Child Support." The appellee father filed a response, requesting that the petition be dismissed.

On July 12, 1999, a hearing was held on the mother's petition before a family law master.[3] The master issued a Recommended Order on January 4, 2001, denying the mother's petition and granting the father's motion to dismiss. The mother sought review by the circuit court, which affirmed the recommended decision on July 2, 2001. This is the ruling that we review in the instant case. We set forth other pertinent facts in our discussion.

## II.

■ Although the lower court made certain findings of fact and conclusions of law in connection with its ruling, we do not find in the record before this Court either the transcript of any hearings or copies of any written stipulations upon which those findings and conclusions are based. This Court is not obliged to give weight or deference to findings and conclusions of a lower court when we are unable to find support for those findings and conclusions in the record. *Cf. Ruble v. Office of Secretary of State,* 192 W.Va. 134, 138, 451 S.E.2d 435, 439 (1994) (in reviewing a contested case, a court is required to examine the record of the proceeding below to ascertain whether there is evidence to support the lower tribunal's decision). In any event, our decision in the instant case turns essentially on matters of law, which this Court determines *de novo.*

The appellee father contends that because the lower court ratified the lump-sum child support payment and the "voluntary termination" of his parental rights in the paternity proceeding—and stated that the same would be in the best interests of the child—that as a consequence, the appellant does not and cannot have any further duty to provide support for his child.[4]

---

3. Pursuant to *W.Va.Code,* 51–2A–1 [2001], the family law master system was replaced by a Family Court system, effective and operable on January 1, 2002. The reasons for the lengthy delay in the court's hearing and ruling on the

mother's petition are not apparent from the record.

4. We note that we reach our decision in the instant opinion by assuming—purely *arguendo* and for purposes of our ruling herein—that the

■ The appellee also contends that because the child's mother "bargained for" the lump-sum agreement, she (and through her assent, the parties' child) should be "held to the terms of the bargain." However, on this latter point, our cases are clear that even the best-intentioned parents cannot "bargain away" their children's right to ongoing support from their parent. "The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." Syllabus Point 3, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991). *See also Runner v. Howell*, 205 W.Va. 359, 518 S.E.2d 363 (1999).[5]

As to the lower court's ratification of the parties' agreement, a review of the entire record, and especially the absence in any of the lower court proceedings of either a guardian *ad litem* for the child or the child advocate office, leads to the inescapable conclusion that the child's independent interests were not properly represented or protected. In this regard, we note that we stated in *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 406, 387 S.E.2d 866, 873 (1989)—a case that was decided before the 1990 order that ratified the parties' lump-sum agreement—that the involvement of a *guardian ad litem* in a paternity proceeding was "... *necessary to*

circuit court in the first instance had the authority to consider the issue of termination of parental rights in the context of a paternity proceeding. We also note that we have recognized, in the context of an area of law that is largely governed by statute—neglect or abuse proceedings—that the termination of parental rights may not necessarily operate to eliminate an obligation to provide child support. *See* Syllabus Point 7, *In Re Stephen Tyler R.*, 213 W.Va. 725, 584 S.E.2d 581, 2003 WL 21511862 (2003).

5. We stated in *Kimble v. Kimble*, 176 W.Va. 45, 341 S.E.2d 420 (1986):

In *Armour v. Allen*, 377 So.2d 798, 799–800 (Fla.Dist.Ct.App.1979), the court noted:

The law is clear that the parents may not contract away the rights of their child for support. Neither may the mother waive the child's right to support by acquiescing in the father's non-payment of support. Child support is a right which belongs to the child. It is not a requirement imposed by one parent on the other; rather it is a dual obligation imposed on the parents by the State.

See also *Smith v. Smith*, 125 Cal.App.2d 154, 164, 270 P.2d 613, 621 (1954) ("A parent may not by any act, conduct, or arrangement of whatever sort shift from his shoulders the legal responsibility and moral duty to support his minor child. It is an absolute, inalienable right enjoyed by the child which no form of contract between the parents, nor change of the domestic circumstances of either of them, may effect."); *Weaver v. Garrett*, 13 Md.App. 283, 287, 282 A.2d 509, 511 (1971) ("Child support is not a debt, but a duty."); *Sayre v. Sayre*, 129 Mich.App. 249, 252, 341 N.W.2d 491, 492 (1983) ("[M]ichigan law does not allow parents to bargain away the rights of their children."); *Hart v. Hart*, 539 S.W.2d 679, 682 (Mo.Ct.App.1976) ("[T]he parties are not authorized to make an agreement to settle or compromise child support payments. The payments are for the benefit of the child."). Furthermore, as the court observed in *Lang v.*

*Lang*, 252 So.2d 809, 812 (Fla.Dist.Ct.App. 1971), "[T]he basic right of the minor child to be supported by its parents is not affected by an agreement between the parties with respect to such obligations; children are not chattels whose rights can be bargained away by parents'; such agreements will be evaluated with the best interest of the child as its criteria." The custodial parent's role as trustee for the child beneficiary was also noted by the court in *Ditmar v. Ditmar*, 48 Wash.2d 373, 374, 293 P.2d 759, 760 (1956), which stated that, "[A] mother has no personal interest in child-support money and holds it only as a trustee .... She cannot waive the children's rights in the support money." *See also Linton v. Linton*, 166 Ind.App. 409, 422, 336 N.E.2d 687, 695 (1975) ("The custodial parent has been analogized to a trustee of the benefits intended for the child.").
176 W.Va. at 49–50, 341 S.E.2d at 424–425.

While the appellant father contends that the appellee mother consulted an accountant before agreeing to the $35,000.00 sum, we cannot see how any accountant could accurately calculate or foresee the possibilities of future medical or other special needs of a child, or the possible relative changes in the financial status of parents over time. In the instant case, it seems that the appellee father has substantial financial means, and that the $35,000.00 figure is less than he would have been expected to pay during the child's minority under the child support guidelines, even leaving aside the question of the child's medical costs. The appellee father asserts that the appellant mother wanted the child's father entirely out of her and the child's life, and that he was agreeable to this—and that this desire was a primary motivation for their initial agreement. But such a motivation, however understandable it might be between adult parties, cannot trump the rights of a child, particularly where there was no independent advocacy for those rights before the court that approved the agreement.

protect the child's interests . . . ." (emphasis added).[6]

For the foregoing reasons, we conclude that the circuit court erred in refusing to set aside the 1990 limitation of the appellee's child support obligation to $35,000.00. We therefore reverse the lower court's order and remand the case for proceedings consistent with the following principles, which we adopt and prescribe in the belief that they will enable this contentious matter to come to a more rapid conclusion:

1. The $35,000.00 paid by the appellee is to be applied to child support at $300.00 per month since the child's birth. Taking into account the birth expenses, inflation, and the child's added medical costs as roughly balancing and compensating for reasonable interest, we calculate that this sum covers a period of ten years from the child's birth, or until May of 1998, and the lower court should use this calculation unless it can determine from readily available evidence obtained without extensive discovery, etc., that this calculation is grossly erroneous and inequitable, in which case it may be adjusted by the court;

2. The lower court on remand should appoint a guardian ad litem for the child. The court should then ascertain and enter judgment for the appellant for past-due child support (including half of the child's uninsured medical expenses) from the child's tenth birthday in May of 1998 to the present, according to the ordinary principles of child support calculation—based upon the parties' incomes, expenses, etc. during that period. No interest should be added. Hopefully this calculation can be made without extensive litigation—and we recognize that due to the passage of time, the lower court may have to do some approximating to achieve a fair result. A reasonable payment plan should be ordered, if the appellee cannot afford to pay any sum of back support that is due;

3. The lower court should then calculate a present/future child support obligation of the appellee in the same fashion as in other child support cases, including dealing with the issue of medical insurance, if it is available; and

4. If other issues arise regarding the child and the parties, they are in the first instance committed to the sound discretion of the lower court, guided by the principles enunciated in this opinion. We express no opinion on possible issues like custody, visitation, inheritance, etc., as they have not been raised by the parties. We do, however, conclude that the circuit court has the authority to enter any appropriate order necessary to permit or facilitate the child's coverage under the appellee's health insurance.

III.

The order of the circuit court dismissing the mother's petition is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Justice DAVIS dissents and reserves the right to file a dissenting opinion.

DAVIS, J., dissenting.

(Filed July 9, 2003)

This Court has often said that hard cases make bad law. Truer words could not be spoken of the case *sub judice*. In its opinion, the majority has determined that a child support obligation, once satisfied, can nevertheless be revived at an indeterminate future date. Although the Court claimed such reinstatement to be necessitated by the child's best interests in this case, I do not agree

---

**6.** As noted, the lump-sum agreement stated that the father would agree to execute a consent to any future adoption of the child. However, both at the time of the parties' agreement and thereafter, the record indicates that there was in fact no pending or intended adoption proceeding. We have specifically held that the execution of a consent to adoption alone does not terminate a duty of child support, although we have also held

that there may be circumstances in which a person who has relied upon an anticipated adoption may be relieved from a child support obligation. *See generally Kimble v. Kimble, supra.* But the instant case does not give rise to such issues, and nothing in this opinion is addressed to or should be taken as speaking to adoption-related issues.

with this conclusion because the record indicates that the child's needs were fully satisfied by her father's prior fulfillment of his support obligation.

## A. *Parental Obligation to Support Child*

It goes without saying that a parent has a fundamental responsibility to support his or her child. "The duty of a parent to support a child is a basic duty owed by the parent to the child[.]" Syl. pt. 3, in part, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991). *See also In re Jamie Nicole H.*, 205 W.Va. 176, 183, 517 S.E.2d 41, 48 (1999) ("Provision of shelter and financial support for children is one of the most basic components of parental responsibility."); *Supcoe v. Shearer*, 204 W.Va. 326, 330, 512 S.E.2d 583, 587 (1998) (per curiam) ("The obligation of child support is grounded in the moral and legal duty of support of one's children from the time of birth."). As such, the obligation of support is imposed solely for the benefit of the child who is the subject thereof rather than for the parent retaining custody. "[C]hild support payments are exclusively for the benefit and economic best interest of the child." *Carter v. Carter*, 198 W.Va. 171, 176, 479 S.E.2d 681, 686 (1996) (citations omitted). *Accord Supcoe*, 204 W.Va. at 330, 512 S.E.2d at 587 ("[C]hild support is for the benefit of the child[.]"); *Lang v. Iams*, 201 W.Va. 24, 28, 491 S.E.2d 24, 28 (1997) (per curiam) ("An

initial child support order is entered for the benefit of the child or children involved."). *See also Kimble v. Kimble*, 176 W.Va. 45, 50, 341 S.E.2d 420, 425 (1986) (observing that, with respect to child support payments, "custodial parent's role [i]s trustee for the child beneficiary" (citation omitted)). This is so because "[t]he duty owed is from the parent to the child, rather than between the two parents." *Lang*, 201 W.Va. at 28, 491 S.E.2d at 28.

## B. *Fulfillment of Support Obligation*

In the case *sub judice*, the majority found that Mr. B. had not fully satisfied his parental duty to support his child and, *sua sponte*, reinstated his support obligation insofar as the amount he previously paid therefor, in the majority's estimation, was not sufficient. While I do not condone the manner in which Mr. B. fulfilled his obligation to support his child,[1] the record in this case is clear that he fully satisfied his duty of support. In 1990, the Circuit Court of Ohio County entered a decretal judgment finding Mr. B. to be responsible for the parties' child's birth expenses; past due child support from her date of birth until the entry of the court's order; and future child support in the amount of $300 per month until she reached the age of majority. Adding these amounts together results in a total obligation of support of approximately $66,341.00. Instead of paying

---

**1.** In the case *sub judice*, the parties entered into a private agreement, albeit ultimately approved of by the Circuit Court of Ohio County, whereby Mr. B. could fully satisfy his child support obligation by making a lump-sum payment to Ms. C. This Court has stated that "a parent cannot waive or contract away [his/her] child's right to support." Syl. pt. 3, in part, *Wyatt v. Wyatt*, 185 W.Va. 472, 408 S.E.2d 51 (1991). Although Ms. C. did not technically contract away her child's right to support from Mr. B., the parties' agreement did have the undesirable effect of bastardizing the parties' child as her adoption was not imminent at the time of the agreement and has yet to occur. Inasmuch as we previously have found that unmarried parents cannot enter an agreement whereby a child support obligation is relieved in exchange for the obligor's execution of a consent to adoption, the agreement at issue in the instant proceeding similarly is at odds with this Court's role as *parens patriae* to safeguard the best interests of the children of this State. *See* Syl. pt. 1, *Kimble v. Kimble*, 176

W.Va. 45, 341 S.E.2d 420 (1986) ("The execution of consent to the adoption of a child by its custodial parent and the custodial parent's current spouse is alone insufficient to terminate a noncustodial parent's decretal obligation to make child support payments."). *See also State of Florida, Dep't of Health & Rehab. Servs. ex rel. State of West Virginia, Dep't of Human Servs., Div. of Soc. Servs. v. Thornton*, 183 W.Va. 513, 519, 396 S.E.2d 475, 481 (1990) (per curiam) ("This Court cannot ... ignore its *parens patriae* duty to protect the best interests of [the child]." (citation omitted)). Absent contrary evidence, however, I am bound to defer to the circuit court's assessment that such an arrangement was, in fact, in the best interests of the parties' child. *See, e.g.*, Syl., in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977) ("Questions relating ... to the maintenance ... of the children are within the sound discretion of the trial court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.").

child support in accordance with the terms of the decretal judgment, however, the parties privately agreed that Mr. B. could fulfill this obligation by making a lump-sum payment of $35,000.00. Converting this amount into present day dollars yields a payment of a sum comparable to the original support obligation derived by the family law master and approved by the circuit court.

Because Mr. B.'s payment approximates his obligation as it was calculated in the decretal judgment and, most importantly, because the circuit court, which tribunal had the opportunity to ascertain the child's needs, twice[2] approved and ratified this agreement as being in her best interests, it is clear to me that Mr. B. has fully satisfied his obligation to support the parties' child. To now hold him responsible for additional payments when he has foregone his opportunity to develop a relationship with his child, and when Ms. C. readily and willingly agreed to this arrangement, imposes upon Mr. B. a further obligation of support that is neither required nor authorized by any law of this State. *See* Syl. pt. 2, in part, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987) ("The authority of the circuit courts to modify ... child support awards is *prospective only* [.]" (emphasis added)). Most importantly, such a revival of Mr. B.'s satisfied support obligation is patently unfair, and I disagree that it is warranted by the applicable law or the facts presently before this Court.

For the foregoing reasons, I respectfully dissent.

2. During the proceedings below, the Ohio County Circuit Court entered two orders memorializing and enforcing the parties' agreement. The first order, entered November 14, 1990, initially adopted the agreement of the parties. Thereafter, in response to Ms. C.'s petition to set aside said agreement, the circuit court entered an order, on July 2, 2001, enforcing the same and from which Ms. C. now appeals to this Court.