# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Cassandra W.,**
**Respondent Below, Petitioner**

**FILED**

May 29, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)   No. 14-1002** (Kanawha County 02-D-387)

**Scott M.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Cassandra W.,[1] appearing *pro se*, appeals the order of the Circuit Court of Kanawha County, entered August 27, 2014, that denied her appeal from the July 15, 2014, order of the Family Court of Kanawha County directing that neither party was required to pay child support. Respondent Scott M., by counsel Clinton W. Smith, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the family court is affirmed, in part, and reversed, in part, and this case is remanded to the family court with directions to hold a new hearing to determine child support.

The parties were never married, but have one child together, K.M, who was born on September 1, 1998. By an order entered by the Family Court of Kanawha County on February 4, 2004, respondent was required to pay petitioner $300.72 per month in child support.

Respondent later went to work in Afghanistan as a technician for a military subcontractor at a substantial salary; consequently, petitioner filed a petition for modification in 2012 in the family court seeking to increase respondent's child support obligation. Petitioner's modification proceeding resulted in respondent's child support obligation being raised to $1,442.69 per month.

Respondent filed the instant petition for modification on March 25, 2014, alleging a

---

[1] Because this case involves sensitive facts, we protect the identities of those involved by using the parties' first names and last initials only. *See State ex rel. W.Va. Dept. of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 (n. 1), 356 S.E.2d 181, 182 (n. 1) (1987).

1

substantial change in circumstances because he had become unemployed. As part of his financial disclosure, respondent stated that he had $48,000 in savings accounts/certificates of deposit. On April 11, 2014, petitioner filed a response and a cross petition alleging that income should be attributed to respondent based on his former employment in Afghanistan. Petitioner also asserted that respondent's financial disclosure did not include the required documents.[2]

The family court held a hearing on the proposed modification on May 20, 2014. However, respondent's counsel informed the family court that he neglected to notify respondent of the hearing date and, therefore, asked for a continuance. Petitioner agreed to the continuance, but requested that respondent be required to file the supporting documentation to his financial disclosure. The family court ordered respondent to file his return for the 2013 tax year.

The hearing was rescheduled for June 10, 2014.[3] Also on that date, respondent filed his 2013 tax return and provided the same to petitioner. Both parties testified at the June 10, 2014, hearing. Respondent testified that he separated from his employment in Afghanistan on January 20, 2014, when his contract expired. Respondent supported his testimony by introducing the January 24, 2014, separation letter from his employment into evidence. When the family court sought clarification from respondent, respondent answered that he could have renewed his contract for approximately another month, but indicated that, beyond that time, he would have been laid off because his employer's contract as a subcontractor was ending.

During his unemployment, respondent testified that he had no income and was living off his savings.[4] Respondent stated that while no longer employed, he was enrolled in training in which he was learning how to program routers and build networks. Respondent stated that he would complete his educational program in four weeks and that he anticipated returning to the workforce following the completion of his training. On re-cross examination by petitioner, respondent indicated that his training would allow him to obtain a higher rate of employment than he could otherwise achieve in the local job market. Respondent testified that he still had his electrician's license.

During her testimony, petitioner agreed with respondent's statement that the child was spending fifty percent of her time with each parent. Petitioner objected to a proposal by respondent that he be attributed income at the federal minimum wage, alleging that income should be attributed to respondent based on his former employment.

---

[2] Petitioner filed her financial disclosure with her response and cross petition, and included supporting documentation. *See* Rules 13(a), W.Va. Rul. Prac. & Proc. for Fam. Cts.

[3] The video recordings of the June 10, 2014 hearing, as well of the May 20, 2014, hearing, have been reviewed.

[4] Respondent testified that he believed that he was eligible for unemployment compensation, but that applying for those benefits would be complicated by the fact that his former employment was in a foreign country.

The other component of respondent's proposed resolution of the case was that he offered to waive any child support due him as a result of the prevailing arrangement where the child evenly divided her time between each parent. Respondent's counsel stated that if petitioner opposed their proposal, respondent would not waive the right to receive child support.

At the end of the hearing, the family court found respondent's testimony that he separated from his employment in Afghanistan involuntarily to be credible. The family court also found credible respondent's testimony that he was pursuing a plan of economic self-improvement that will result in an economic benefit to the child pursuant to West Virginia Code § 48-1-205(c), which provides that income shall not be attributed in certain situations even in those cases where termination from employment is voluntary. Nonetheless, the family court, over petitioner's objection, adopted respondent's proposal that he (1) be attributed income at the federal minimum wage—contrary to the court's findings that the attributed income statute, West Virginia Code § 48-1-205, did not apply—and (2) be allowed to waive the child support due him under any new child support calculation.

In calculating child support, the family court determined that respondent's monthly gross income was $1,256.67 at the federal minimum wage. The family court and the parties agreed that petitioner's monthly gross income was $3,528. The family court then determined that pursuant to the new child support calculation, petitioner owed respondent $158.73 per month. However, the family court found that respondent waived the right to receive child support, and therefore, ordered that there would be no child support paid for the remainder of the child's minority[5] absent a substantial change of circumstances.

The family court's July 15, 2014, order memorializing its various rulings from the June 10, 2014, hearing provided that the new $0 child support directive was effective from June 1, 2014, rather than the date of respondent's petition for modification as a sanction for respondent's failure to provide his 2013 tax return in a timely manner.[6] Petitioner appealed the family court's July 15, 2014, order to the Circuit Court of Kanawha County, which denied her appeal by an one-page order entered August 27, 2014.

Petitioner now appeals to this Court. We review the matter under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review

---

[5] Based on her date of birth, the child will not achieve her majority for approximately another year and half.

[6] Rule 13(a) of the West Virginia Rules of Practice and Procedure for Family Court provides, in pertinent part, that "petitioner and respondent shall file the following documentation in support of the required financial statement . . . no later than five days prior to any scheduled hearing."

questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 475, 607 S.E.2d 803, 804 (2004).

On appeal, petitioner argues that the family court erred in not attributing to respondent his income from his former employment in Afghanistan or, in the alternative, the income he would have earned as a licensed electrician in the local job market. Respondent counters that the family court determined that it was not required to attribute income to him based on findings that (1) respondent did not voluntarily terminate his employment; and (2) respondent was pursuing a plan of economic self-improvement that will result in an economic benefit to the child.

We note that West Virginia Code § 48-1-205(b) requires that in order for income attribution to apply, the family court must find that three requirements are met—the first of which is that the obligor left employment voluntarily. Furthermore, even when the threshold test has been satisfied, West Virginia Code § 48-1-205(c) provides, in pertinent part, that "[i]ncome *shall not* be attributed to an obligor who is unemployed . . . if any of the following conditions exist: . . . (2) The parent is pursuing a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to the children[.]" (Emphasis added.)

The family court's findings that West Virginia Code § 48-1-205(b) did not require income attribution were based on the family court's judgment that respondent's testimony was credible. "An appellate court may not decide the credibility of witnesses . . . as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W.Va. 657, 669 (n. 9), 461 S.E.2d 163, 175 (n. 9) (1995). Based on our review of the video recording of the June 10, 2014, hearing, we find no cause to disturb the family court's credibility determination. Also, respondent introduced the January 24, 2014, separation letter from his employment in support of his testimony that he was terminated involuntarily. The parties dispute whether the separation letter indicates that respondent's termination was voluntary or involuntary. From a review of the letter, we determine that the family court was entitled to find that the letter was supportive of respondent's position that he was involuntarily terminated from his job; accordingly, we do not disturb the family court's finding in that regard. *See Id.* (appellate court also defers to factfinder's weighing of evidence). Therefore, we find that the family court did not abuse its discretion in refusing to attribute to respondent his income from his former employment or, in the alternative, the income he would have earned as a licensed electrician.

Petitioner also argues that the family court erred in attributing income to respondent at the federal minimum wage as part of its ruling that neither party is required to pay child support for the remainder of the child's minority absent a substantial change of circumstances. By adopting a resolution proposed by respondent and attributing minimum wage income to him, we determine that the family court committed two errors of law. First, the family court's decision to attribute any amount of income to respondent was contrary to the findings—discussed *supra*—that precluded the attributed income statute, West Virginia Code § 48-1-205, from applying to this case. Thus, we find that the family court erroneously attributed income to respondent after it determined that it did

4

not have the statutory authority to do so.[7]

Second, while respondent agreed to income being attributed to him at the federal minimum wage, respondent did so only as part of his proposal where he would also waive any child support due him in the event that the family court determined—which the court did—that petitioner had a support obligation. While respondent's proposal was arguably somewhat favorable to petitioner, petitioner immediately objected to it. After petitioner made her objection, respondent's counsel replied that if petitioner opposed their proposal, respondent would not waive the right to receive child support. This indicates that respondent made the proposal only in an attempt to persuade petitioner not to contest his request to have his support obligation reduced. However, what we find significant is that respondent used as leverage something that was not his. We have consistently held that a parent may not bargain the right to receive support away because it is a right that belongs to the child, and not the parent. *See* Syl., *Rebecca C. v. Michael B.*, 213 W.Va. 744, 745 584 S.E.2d 600, 601 (2003) (quoting Syl. Pt. 3, *Wyatt v. Wyatt*, 185 W.Va. 472, 473, 408 S.E.2d 51, 52 (1991)) ("The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support.") Thus, we determine that the family court committed a second legal error in adopting—over petitioner's objection—respondent's proposal by which he waived the child's right to receive child support.

In *Green v. Ford Motor Credit Co.*, No. 13-0243, 2014 WL 274474, at *3-4 (W.Va. Supreme Court, January 24, 2014) (memorandum decision), we reversed a circuit court's decision to deny a motion to vacate settlement because it relied on an error of law. After resolving the legal error, we remanded the case for a new hearing on the motion. *Id.* at *4. In the instant case, we similarly reverse the family court's ruling that neither party is required to pay child support for the remainder of the child's minority—as it relies on two errors of law—and remand this case for a new hearing to determine child support.

With regard to issues to be determined on remand, as discussed *supra*, the family court correctly determined that the attributed income statute did not apply to this case. However, petitioner argues that the family court should have taken into account the $48,000 respondent has in savings when it recalculated the parties' respective child support obligations. *See* W.Va. Code § 48-13-102 (providing that child has right to parents' standard of living and "share in [her] parents' *resources*") (emphasis added). Respondent counters that because a savings account is not included within the definition of "gross income" as set forth in West Virginia Code § 48-1-228(a), the statutory framework for determining child support contradicts petitioner's argument that respondent's savings should have been considered. We agree with petitioner.

In *Adkins v. Adkins*, 221 W.Va. 602, 609, 656 S.E.2d 47, 54 (2007), we determined that when an obligor parent is terminated from his job involuntarily and West Virginia Code § 48-1-205 does not apply to allow his pre-termination income to be attributed to him, a child support order still may be entered with regard to that parent provided that the order reflects the

---

[7] We note that "[a]ttribution of income is a legislative invention." *Adkins v. Adkins*, 221 W.Va. 602, 608, 656 S.E.2d 47, 53 (2007).

5

parent's actual income[8] and other resources during the period of unemployment. We explained that "parents have an abiding duty to provide support for their dependent children" and that "[c]ourts remain obligated under the relevant statutory guidelines for child support awards[9] to consider all sources of income *or other property* when calculating support payments initially or upon modification." *Id.* (emphasis added). As petitioner points out, West Virginia Code § 48-13-102 provides that the child has a right to share in her father's resources. We note that $48,000 is not an insignificant amount of money from which a person may not only provide for himself, but also for his child. Therefore, we find that the family court should consider respondent's savings at the remand hearing to determine child support.

Respondent testified that during his unemployment, he was using his savings to pay expenses. Petitioner notes that $48,000 is approximately $10,000 more than her annual salary, but acknowledges that some of respondent's savings may be held in certificates of deposit which may present questions of liquidity. We find that these are factors the family court needs to consider when it makes a new determination of child support at the remand hearing, and in preparation for that hearing, may order the parties to supplement their financial disclosures.[10]

For the foregoing reasons, we reverse the circuit court's August 27, 2014, order that denied petitioner's appeal from the family court's July 15, 2014, order. With regard to the July 15, 2014, order, we (1) affirm the family court's determination that the attributed income statute, West Virginia Code § 48-1-205, does not apply to the parties' case; (2) reverse the family court's ruling that neither party is required to pay child support for the remainder of the child's minority absent a

---

[8] As West Virginia Code § 48-1-228(a) reflects, not all income comes from employment.

[9] The relevant statutory guidelines are found at West Virginia Code §§ 48-13-101 to 48-13-804.

[10] The parties dispute whether respondent has submitted all of the supporting documents required by Rule 13(a) of the West Virginia Rules of Practice and Procedure for Family Court for his financial disclosure. We note that after petitioner raised the issue at the May 20, 2014, hearing, the family court required respondent to submit his 2013 tax return, which he subsequently filed in an untimely manner. While the family court sanctioned respondent for the untimely filing, the court fashioned a sanction that was not one of the two remedies set forth in Rule 13(b), which are to deny the offender's requested relief and/or accept the opposing party's financial information as accurate. However, because Rule 13(b) uses the permissive word "may," we determine that Rule 13(b) does not mandate that either one of its prescribed sanctions be utilized. Therefore, we cannot say, under the circumstances of the instant case, that the family court erred in imposing its own sanction. Furthermore, while petitioner believes that the family court should have compelled the production of additional documents, the documents she seeks—such as tax returns and W-2 forms for years prior to 2013 and recent pay stubs from respondent's former job—are not relevant in a situation where, such as in this case, West Virginia Code § 48-1-205 does not apply and respondent's income from his prior employment cannot be attributed to him.

substantial change of circumstances; and (3) remand the case to the family court with directions to hold a new hearing to determine child support.

Affirmed, in part, Reversed, in part, and Remanded with Directions.

**ISSUED**: May 29, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Brent D. Benjamin

7