IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**September 30, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DAVID R.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-12**    (Fam. Ct. Wyoming Cnty. Case No. FC-55-2018-D-161)

**HONEY R.,**
**Petitioner Below, Respondent**


**MEMORANDUM DECISION**

Petitioner David R. ("Father")[1] appeals the Family Court of Wyoming County's November 19, 2024, final divorce order and its December 18, 2024, order denying his motion to amend the final divorce order. Respondent Honey R. ("Mother") and the guardian ad litem ("GAL") responded in support of the family court's decisions.[2] Father filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

Father and Mother were married on August 30, 2003, in Wyoming County, West Virginia and share one child, born September 6, 2017. They relocated several times but ultimately relocated to Hamilton County, Indiana until their separation in March of 2018, when Mother relocated, returning to Wyoming County to live with her family. Father remained in Indiana. Throughout the ensuing six years of litigation, Mother argued that she left the relationship to escape Father's abuse; Father, on the other hand, argued that Mother kidnapped and withheld the child from him.

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is self-represented. Mother is represented by Lyne Ranson, Esq. The GAL is Adam D. Taylor, Esq.

1

On November 14, 2018, Mother filed for divorce in Wyoming County, seeking custody and child support, and noting that she and the child had lived in West Virginia for at least six months.[3] In December of 2018, a process server attempted service on Father in Indiana seven times. On March 5, 2019, a temporary hearing was held but Father failed to appear. The family court found that constructive service by publication had been accomplished and proceeded with the hearing. The family court entered its temporary order on March 28, 2019, allocating custody to Mother, ordering child support, awarding Mother her personal property, and directing Father to keep insurance coverage on Mother.

On May 24, 2019, Father filed a writ of prohibition in the Wyoming County Circuit Court seeking to prohibit the enforcement of the family court's order. On July 2, 2019, Father was personally served with Mother's petition for divorce, parenting plan, financial statement, and notice of hearing and summons in Indiana. The Wyoming County Circuit Court granted Father's writ of prohibition by order entered on September 30, 2019, finding that the family court had not obtained personal jurisdiction over Father, and therefore, the family court may grant a divorce, but lacked jurisdiction to address spousal support, property, or child support. By order entered on October 23, 2019, the family court vacated its March 28, 2019, temporary order.

On July 27, 2020, Father was personally served with the summons, petition for divorce, financial statement, and parenting plan in West Virginia while appearing for a family court hearing in Wyoming County regarding motions filed by Mother and Father. After extensive testimony, the family court issued an order dated October 13, 2020, in which it found that it had obtained personal jurisdiction over Father under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), and Father had waived jurisdiction by filing motions and seeking relief.[4] Mother moved for retroactive child support. The family court designated Mother as the primary residential parent. Father was granted phased-in parenting time every other week in Wyoming County from 4:00 p.m. until 7:00 p.m. at his expense and supervised by Mother for the first twenty-one days, with

---

[3] Father filed a petition for divorce in Indiana on May 15, 2018, but it was dismissed. Neither custody nor child support was established in Indiana or any other state.

[4] Under the UCCJEA, West Virginia Code § 48-20-102(g) (2001) defines a child's home state as "the state in which a child lived with a parent [. . .] for at least six consecutive months immediately before the commencement of a child custody proceeding."

Additionally, West Virginia Code § 48-20-108(c) (2001) states, "[n]otice is not required for the exercise of jurisdiction with respect to a person who submits to the jurisdiction of the court."

the following twenty-one days being unsupervised. The family court ordered Father to pay $1,160 in monthly child support and held Mother's motion for retroactive child support in abeyance.

On March 9, 2021, Father filed a motion in circuit court to enforce the writ of prohibition, arguing that the circuit court's prior order granting the writ precluded West Virginia courts from ever having personal jurisdiction over him. On May 7, 2021, the circuit court denied Father's motion to enforce the writ with prejudice, finding that the family court had properly vacated its temporary order and later achieved personal jurisdiction. On May 28, 2021, Father appealed the circuit court's order denying his motion to enforce the prohibition order to the Supreme Court of Appeals of West Virginia ("SCAWV"). On October 26, 2022, the SCAWV entered its decision affirming the circuit court's denial of Father's motion. *See David R. v. Shuck*, No. 21-0440, 2022 WL 14812565, at *2 (W. Va. Oct. 26, 2022) (memorandum decision).

Another hearing was held on May 17, 2023. At that hearing, a GAL was appointed for the child, and Father again argued that the family court lacked personal jurisdiction. The order was entered on June 9, 2023, finding that Father had spent a minimum of $440,343.31 of marital funds since the parties' separation. Father was directed to file an updated financial statement with supporting documents after failing to file financial documents for approximately four years.

The final hearing was held on August 27-28, 2024. On September 3, 2024, Mother filed a proposed final order. On September 9, 2024, Father filed a motion to modify or reconsider temporary child support, which the court denied. The final order was entered on November 19, 2024, wherein the family court made the following relevant findings of fact and conclusions of law:

- All accumulated assets were marital property which should be equitably divided.
- The marital home was appraised at $788,000. Father had sole use and possession of the marital home since 2018. He will continue to have sole use and possession of the home and shall be responsible for the $308,092.82 mortgage.
- Father's 2013 Acura had a value of $13,391, and he shall be responsible for all associated costs.
- Father testified that he spent between $400,000 and $500,000 of marital funds after the parties' separation.

- Mother withdrew $60,000 from one of the parties' savings accounts in March of 2018.
- Mother was entitled to her equitable share of passive appreciation, which accumulated in Father's investment accounts.
- To equalize equitable distribution, Father owed Wife $818,252.34.
- Father's annual salary was $150,000 plus additional part-time work of up to ten hours per week at seventy dollars per hour as an independent contractor. Father's total monthly income was calculated at $15,403.96.
- Mother earned $13.13 per hour with a monthly gross income of $2,133.66.
- Father shall pay $1,531.23 per month in child support.

On December 9, 2024, the parties' agreed parenting plan was entered, designating Mother as the primary residential parent with sole decision-making authority. Father received parenting time on the second Friday of every month for nine consecutive overnights in Wyoming County during school months, and three weeks on/three weeks off during the summer. That same day, Father filed a motion to alter or amend the final order pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. The family court denied the motion by order entered December 18, 2024, finding that Father was trying to reargue his case, and that Rule 59(e) was inapplicable because the court's final order was not a "judgment" as contemplated by the Rule.

It is from the November 19, 2024, final divorce order and the December 18, 2024, order denying his motion to alter or amend that Father now appeals. For these matters, we use the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders); Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins.*, 204 W. Va. 430, 513 S.E.2d 657 (1998) (stating that on appeal from a court's ruling on Rule 59(e) motion, this Court applies the same standard of review "that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.").

4

On appeal, Father raises twelve assignments of error. However, because some are similar, they will be consolidated. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

In his first assignment of error, Father asserts that the family court erred by entering orders on issues outside of legally ending the marriage because the family court did not properly establish personal jurisdiction over him. On July 27, 2020, the family court heard testimony and took evidence regarding whether it could properly exercise personal jurisdiction over Father on the remaining issues of divorce,[5] custodial allocation, and child support.[6] On October 13, 2020, the family court entered an interlocutory order holding that the family court had established personal jurisdiction over Father. This order was not a final order, and Father was unable to appeal it. *See* W. Va. Code § 51-11-4(d)(8) (stating that the ICA does not have jurisdiction over interlocutory appeals). Attached to Father's notice of appeal to this Court is the November 11, 2024, Findings of Fact, Conclusions of Law and Final Divorce Order, the December 9, 2024, Agreed Parenting Plan Order, and the December 18, 2024, Order Denying Respondent's Rule 59(e) Motion to Alter or Amend. Father failed to attach the family court's October 13, 2020, decision regarding personal jurisdiction to his notice of appeal. Rule 13(c) of the West Virginia Rules of Appellate Procedure states that "the party appealing shall file the notice of appeal, including attachments required in the notice of appeal form contained in Appendix A of these Rules." Appendix A requires that petitioners "ATTACH COPIES OF ALL ORDERS BEING APPEALED." Orders that were not attached to the notice of appeal

---

[5] Although the family court legally ended the marriage, the issues of equitable distribution, spousal support, and attorney fees were still yet to be decided.

[6] Prior to the July 27, 2020, hearing, Father filed a Writ of Prohibition to the circuit court, arguing that the family court failed to establish personal jurisdiction. In the circuit court's September 30, 2019, order granting prohibition relief, the family court was prohibited from proceeding on certain matters "until and when personal jurisdiction has been achieved." Subsequently, the family court vacated its temporary order. On April 24, 2020, Mother filed a Motion to Establish Interstate Custody and Child Support Jurisdiction. The July 27, 2020, hearing was held on Mother's motion and personal jurisdiction was established by order dated October 13, 2020. In March of 2021, Father filed a Motion to Enforce Writ of Prohibition, arguing that the circuit court's 2019 writ of prohibition "precluded a West Virginia court *from ever* having in personam jurisdiction over him." *David R. v. Shuck*, No. 21-0440, 2022 WL 14812565 (W. Va. Oct. 26, 2022) (memorandum decision). The SCAWV denied Father's Motion to Enforce Writ of Prohibition, holding that the form of Father's motion did not require the circuit court to undertake a full review of the family court's personal jurisdiction determination, and the circuit court did not err when it declined to enforce the prior order granting prohibition relief because the 2019 order was vacated and there was nothing left to enforce.

are not properly before this Court and will not be considered. *See Goff v. Smith*, No. 23-ICA-299, 2024 WL 4052866 (W. Va. Ct. App. Sept. 4, 2024) (memorandum decision); *see also Gilhuys v. Hardy County 911 Center*, No. 23-759, 2025 WL 1779845 (W. Va. June 27, 2025) (memorandum decision) (noting that the ICA properly excluded an order from consideration that was not in the petitioner's notice of appeal). Accordingly, we decline to address Father's arguments related to personal jurisdiction.

In his second, third, and fifth assignments of error, Father contends that the family court erred by failing to award make-up parenting time after Mother "abducted and withheld" the child for several years, permitting Mother to remain in West Virginia rather than returning home to Indiana, and by awarding him less than fifty percent of parenting time without written justification. Father's arguments lack merit. Father evaded service in Indiana on multiple occasions, filed a writ of prohibition to avoid personal jurisdiction in West Virginia, and refused to submit required financial documentation for approximately four years, thus, he single-handedly caused the delay. The SCAWV has long held that a party who does not cooperate in a proceeding cannot complain about the result. *See generally Young v. Young*, 194 W. Va. 405, 460 S.E.2d 651 (1995). Further, regarding Father's current parenting time, he entered into a parenting agreement on December 9, 2024. Pursuant to *Moreland v. Suttmiller*, 183 W. Va. 621, 625, 397 S.E.2d 910, 914 (1990), "[o]nce a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the wisdom of the settlement does not constitute good cause for setting it aside." Accordingly, we affirm the family court's rulings on these issues.

In Father's fourth and sixth assignments of error, he contends that the family court erred in attributing him income after he lost his job in 2021 and erred in failing to consider a child support reduction based on what it costs him to exercise parenting time. We disagree. The record reflects that Father presented evidence and testimony that his annual salary was $150,000 and that he had the option to work up to ten extra hours per week at seventy dollars per hour, which made his monthly gross income $15,403.96. The family court did not "attribute" income to Father; rather, it calculated child support using the information provided by Father. Additionally, because the parties live in different states and Father deliberately chose not to participate in the family court proceedings for several years, we find that the family court did not abuse its discretion when it required Father to exercise parenting time in West Virginia at his own expense. Thus, Father is not entitled to relief on these assignments of error.

In Father's seventh, eighth, ninth, tenth, eleventh, and twelfth assignments of error, he argues that the family court committed multiple errors in its division of marital property. Specifically, he asserts that many of his expenditures were the result of Mother bringing the child to West Virginia and not "dissipation of marital assets." This argument lacks merit. As previously established, Father delayed the proceedings by refusing to submit to the court's jurisdiction. Father also argues that he should have received $261,974.24 in

6

*Conrad* credits for mortgage payments, home maintenance, and utilities.[7] We disagree. Father's argument in support of *Conrad* credit lacks merit because he resided in the home during the separation and benefited from its upkeep. *See Crea v. Crea*, 222 W. Va. 388, 664 S.E.2d 729 (2008) (holding no abuse of discretion when husband did not receive credit for monthly upkeep of the home because he enjoyed benefits of the home).[8] Thus, Father is not entitled to relief on these assignments of error.

Finally, Father argues that the family court wrongfully valued his Acura automobile at $13,000 which reflected its value at the date of the parties' separation rather than the $7,472.46 that he received in insurance proceeds after the car was wrecked, approximately six years after separation and almost three months after the final divorce hearing. Father also argues that the "voluntary" child support he paid after the parties separated, the costs of his legal education, court costs, as well as money spent to exercise his parenting time should be deducted from Mother's share of equitable distribution. We disagree. West Virginia Code § 48-7-104 (2001) states that the family court shall "[d]etermine the net value of all marital property of the parties as of the *date of the separation of the parties*." (emphasis added). Here, the family court properly declined Father's request to consider his expenses for "voluntary" child support,[9] court costs, and travel expenses as marital property because he incurred those costs after separation. Similarly, the value of Father's automobile six years after separation is irrelevant for the purposes of equitable distribution. Thus, we find no error or abuse of discretion.

Accordingly, we affirm the family court's November 19, 2024, and December 18, 2024, orders.

Affirmed.

---

[7] *See Conrad v. Conrad*, 216 W. Va. 696, 612 S.E.2d 772 (2005) (holding that the recoupment of payment of marital debt by one party prior to the ultimate division of marital property is permitted upon final equitable distribution order).

[8] Additionally, Father contends that he should have been reimbursed for payments he made toward Mother's education pursuant to West Virginia Code § 48-7-103(3)(A) (2001). Upon review of the record, Father failed to raise this argument below and we decline to address it on appeal.

[9] The SCAWV has made it clear that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support." *Rebecca C. v. Michael B.*, 213 W. Va. 744, 745, 584 S.E.2d 600, 601 (2003). Father had a duty to support the child regardless of the date of separation and the amount paid was properly excluded from the equitable distribution calculation.

7

**ISSUED:**  September 30, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White